# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1577

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of North Dakota. |
| Alvin Peterson, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 21, 2010
Filed: January 27, 2011

_____

Before RILEY, Chief Judge, MELLOY and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Alvin Peterson ("Peterson") was charged with two Class B misdemeanor violations for draining wetlands on property encumbered by a federal wetlands easement, in violation of 16 U.S.C. § 668dd(c), (f)(2). The first violation—number W0900741—alleges Peterson drained wetlands 3, 5, and 8, subject to Walsh County Easement 124X-1-3, on the west 1/2 of Section 15, Township 156N, Range 59W ("Section 15"). The second violation—number W0900742—alleges Peterson drained wetland 2, subject to Walsh County Easement 56X-2, on the north 1/2, southeast 1/4 of Section 16, Township 156N, Range 59W ("Section 16"). A magistrate

judge[1] found Peterson guilty of both violations, *United States v. Peterson*, 2008 WL 4922413 (D.N.D. Nov. 12, 2008), and sentenced him to 5 years' probation and imposed a $10,000 fine and $1,500 in restitution. Peterson appealed to the district court, *see* Fed. R. Crim. P. 58(g)(2)(D), and the district court[2] affirmed, *United States v. Peterson*, No. 2:08-mj-16, (D.N.D. Mar. 1, 2010). On appeal to this court, Peterson challenges the sufficiency of the evidence solely for his conviction on violation number W0900741, the charge involving wetlands on Section 15. Because substantial evidence supports Peterson's conviction, we affirm.

## I.    BACKGROUND

In 1966, Peterson's parents, Joe Peterson ("Joe") and Emma Peterson ("Emma"), conveyed a wetlands easement ("1966 easement") to the United States Fish and Wildlife Service ("FWS") in exchange for $4,700. As with many such easements negotiated by FWS before 1976, FWS utilized a standard wetland conveyance document that included the entire tract of land in its legal description. In this case, the 1966 easement purported to grant wetlands protection to FWS for the west 1/2 of Section 15 and for portions of six other sections of land. Although the 1966 easement refers to an attached map certified by the FWS Regional Director, no such map was ever located, if it did exist. However, included with the 1966 easement is an administrative easement summary that delineates the total "tract acreage" (1510.49 acres) and the "wetlands acreage" (314 acres) covered by the easement. Notably, the easement summary did not delineate how the wetlands acreage was distributed among each of the seven sections.

_____

[1] The Honorable Alice R. Senechal, United States Magistrate Judge for the District of North Dakota.

[2] The Honorable Ralph R. Erickson, Chief Judge, United States District Court for the District of North Dakota.

Joe leased the farmland on the west 1/2 of Section 15 to Peterson beginning in 1954. In 1973, after a series of disagreements with Peterson regarding the easement's coverage, FWS purported to "renegotiate" the 1966 easement with Peterson by having him execute, "for Joseph C. Peterson," a hand-drawn map of Section 15 that delineated the wetlands on the section covered by the easement ("1973 map"). Although Joe and Emma remained the owners of the land at the time, they did not sign the 1973 map, and they were not involved in its negotiation. Peterson inherited the west 1/2 of Section 15 in 1975.

In 1999, and again in 2003, Peterson constructed ditches to drain water from certain wetlands on Section 15. As a result, Peterson was convicted of draining protected wetlands, in violation of 16 U.S.C. § 668dd(c), (f)(2).[3] He was fined, sentenced to probation, and ordered to comply with a wetlands restoration program. Peterson appealed to this court, and we affirmed. *See United States v. Peterson*, 178 Fed. App'x 615, 616 (8th Cir. 2006) (unpublished per curiam) ("*Peterson I*").

After the court-ordered restoration was completed in the fall of 2006, Peterson hired a contractor to remove the man-made earthen "plugs" installed during the restoration of wetlands 3, 5, and 8 on Section 15, resulting in more than an 87 percent reduction in water level. FWS issued a violation notice, and the magistrate judge again convicted Peterson of violating of 16 U.S.C. § 668dd(c), (f)(2), for draining wetlands on property encumbered by a federal wetlands easement. The district court affirmed, and this appeal followed.

---

[3] The applicable statute provides that "[n]o person shall disturb, injure, cut, burn, remove, destroy, or possess any real or personal property of the United States, including natural growth, in any area of the [National Wildlife Refuge] System." 16 U.S.C. § 668dd(c).

## II.    DISCUSSION

On appeal, Peterson claims the Government's evidence was insufficient to prove that the drained wetlands on Section 15 existed at the time of the 1966 easement's conveyance, that the drained wetlands are covered by the 1966 easement, and that Peterson had the requisite knowledge. He also argues that his actions amounted to a permissible clearing of natural waterways that had become overgrown and silted.

"In passing upon the sufficiency of the evidence to sustain an ultimate finding of guilt following a bench trial, we apply the same standard of review that is applied where a defendant has been found guilty by a jury; that is to say, the finding must be sustained if it is supported by substantial evidence." *United States v. Erhart*, 415 F.3d 965, 969 (8th Cir. 2005) (quoting *United States v. Barletta*, 565 F.2d 985, 991 (8th Cir. 1977)). "On review, we will consider the evidence in the light most favorable to the guilty verdict." *Id.* To convict Peterson of the violation, "the United States must prove beyond a reasonable doubt that identifiable, *covered* wetlands (as existing at the time of the easement's conveyance and described in the Easement Summary) were damaged and that the defendant knew that *the parcel* was subject to a federal easement." *United States v. Johansen*, 93 F.3d 459, 467 (8th Cir. 1996) (emphasis and parenthesis in the original) (citing *United States v. Vesterso*, 828 F.2d 1234, 1244 (8th Cir. 1987)).

First, Peterson argues that the Government failed to show that the drained wetlands existed at the time of the easement's conveyance in 1966. We disagree. The Government introduced an aerial photograph of Section 15 taken in 1962, four years before the easement was conveyed. FWS wildlife biologist Mike Estey testified that the wetlands depicted in the 1962 aerial photograph were of the same approximate size, shape, and location as the drained wetlands. Moreover, the wetlands depicted in the 1962 aerial photograph align closely with the wetlands depicted in the 1973 map. After reviewing the record, we conclude that the photographic evidence, maps, and

expert testimony taken together amount to substantial evidence that the drained wetlands on Section 15 existed at the time of the easement's conveyance in 1966.

Second, Peterson argues that the Government has failed to show that the specific wetlands he drained on Section 15 were covered by the 1966 easement. He asserts that the 1966 easement, which extends over the west 1/2 of Section 15 and six other sections of land, is "not specific enough to provide adequate notice and a legal encumbrance on Alvin Peterson's use of his land" because it lacks a contemporaneously-filed map or a section-by-section delineation of covered wetlands acreage. In the absence of a map or a section-by-section delineation of wetlands acreage, Peterson argues that the Government cannot prove which wetlands were included in the 314-acre total and which wetlands may not have been covered by the easement. The Government argues that "[t]he [drained] wetlands were 'now existing' in 1966, and therefore covered by the terms of the easement."[4]

The Government does "not need to legally describe the confines of each covered wetland under the pre-1976 easements." *Johansen*, 93 F.3d at 467. However, because "federal wetland easements are limited to the acreage provided in the Easement Summaries," *id.* at 466, it is insufficient to show only that the drained wetlands were in existence at the time of the conveyance of the easement. Without the aid of a map filed with the easement or some other method of identifying the

_____

[4] We look only to the 1966 easement and easement summary, and not to the 1973 map, to determine whether the drained wetlands were covered by the 1966 easement. Although the Government occasionally refers to the 1973 map as a "renegotiation" of the 1966 easement, it conceded that the 1973 map did not change the terms and scope the 1966 easement: "[i]t . . . does not make any difference whether [Alvin] Peterson did or did not have the authority to sign the 1973 renegotiated map. The easement was recorded in 1966 and the legal rights of the United States stem from the 1966 easement." To be sure, the 1973 map is evidence that Peterson knew that his property was encumbered by an easement, but this does not influence our inquiry into whether the drained wetlands actually were covered by the 1966 easement.

specific wetlands covered by the easement, however, the Government still can prevail by proving that the easement encumbers *all* wetlands on the tract that were in existence at the time of the conveyance.

Implicit within Peterson's argument, however, is the assertion that some wetlands acreage on the seven sections—including Section 15—was not covered by the 1966 easement. In contrast, the Government argues that the 1966 easement encumbers all wetlands existing in 1966 on the seven sections, including Section 15. The text of the 1966 easement supports the Government's argument. The easement prohibits "draining or permitting the draining, through the transfer of appurtenant water rights or otherwise, of *any surface water* including lakes, ponds, marshes, sloughs, swales, swamps, or potholes, *now existing or reoccurring* due to natural causes on the above-described tract" (emphasis added). When the 1966 easement is read together with the easement summary, it is clear that the 1966 easement covers all wetlands then existing on the seven sections—including Section 15—and that those wetlands total 314 acres, as described in the easement summary.

The 1966 easement included an additional clause that could potentially exclude some wetlands: "Excepted are certain drainage ditches which the parties of the first part [Joe and Emma] may maintain and/or wetlands which are deleted from the provisions of this easement. The above exceptions are shown on a map certified by the Regional Director at the time of acceptance." The magistrate judge, however, noted that no such map was submitted in evidence and found that the record lacked any evidence to indicate that this clause served to exclude any wetlands in existence in 1966. *Peterson*, 2008 WL 4922413, at *2. Moreover, before the magistrate judge, Peterson's counsel characterized this provision as pertaining only to ditches, not wetlands: "it essentially says that if there are ditches or drainages that are maintained prior to 1966 they can continue being maintained." Likewise, Peterson does not argue in his briefs on appeal that this clause removed certain wetlands from the scope of the easement; his briefs mention this clause only within a discussion of Peterson's

knowledge of the easement's scope. Therefore, Peterson has "waived his argument . . . because the issue was not developed in his briefs as required." *Rotskoff v. Cooley,* 438 F.3d 852, 854 (8th Cir. 2006). Even if we were to overlook this waiver, we find no evidence in the record that refutes the magistrate judge's conclusions that this clause did not exclude any wetlands from the 1966 easement and that all wetlands on the seven sections in existence in 1966 were encumbered by the 1966 easement.

Therefore, because the drained wetlands were in existence at the time of the conveyance, and because the 1966 easement covers all wetlands that were in existence at the time of the conveyance, substantial evidence supports the district court's conclusion that the wetlands Peterson drained on Section 15 were covered by the easement—despite the easement's failure to include a contemporaneously-filed map or provide a section-by-section breakdown of the wetlands acreage.

Third, Peterson argues that the Government failed to show that he knew the scope of the 1966 easement. Peterson overstates the degree of knowledge required by our precedent: the Government need only prove that Peterson "knew that *the parcel* was subject to a federal easement." *Johansen*, 93 F.3d at 467. The 1973 map, signed by Peterson, clearly establishes that Peterson knew that Section 15 was subject to a federal easement. Even if we were to look past the 1973 map, Peterson's previous conviction involving the drainage of the very wetlands at issue in this prosecution provided sufficient notice that the parcel was subject to a federal easement. *See Peterson I*, 178 Fed. App'x at 616. Accordingly, substantial evidence supports the conclusion that Peterson knew that Section 15 was subject to a federal easement.

Finally, Peterson argues that his actions amounted only to a permissible clearing of natural waterways that had become overgrown and filled with silt. We disagree, as the record evidence demonstrates that Peterson's work exceeded this description. The contractor hired by Peterson did not merely clean out ditches or natural

waterways.  At Peterson's direction, the contractor removed the man-made earthen plugs—installed as restorative measures required by his previous conviction—and breached the basins of wetlands 3, 5, and 8, resulting in at least an 87 percent reduction in water level.  Accordingly, Peterson's argument is without merit.

## III.  CONCLUSION

For the foregoing reasons, we affirm Peterson's conviction.

_____