# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 11-1085

———————

Bonnie Rodrick,            *
           *
       Appellant,       *    Appeal from the United States
           *    District Court for the
    v.              *    Western District of Missouri.
           *
Wal-Mart Stores East, L.P., doing    *
business as Wal-Mart Supercenter,    *
           *
       Appellee.        *

———————

Submitted: September 22, 2011
Filed: January 20, 2012

———————

Before LOKEN, BEAM, and MURPHY, Circuit Court Judges.

———————

BEAM, Circuit Judge.

Bonnie Rodrick tripped on a rug in front of a drinking fountain at a Wal-Mart store in Maryville, Missouri, in 2004, suffering injuries to her left hip. Invoking diversity jurisdiction, Rodrick sued Wal-Mart in 2007 asserting tort claims for her injuries. Following a four-day trial, a jury ruled in favor of Wal-Mart. Rodrick filed a motion for new trial, which the district court denied.[1] Rodrick appeals and we affirm.

---

[1]The Honorable Robert E. Larsen, United States Magistrate Judge for the Western District of Missouri.

## I.    BACKGROUND

On April 2, 2004, Rodrick tripped on a rug and fell as she passed in front of a water fountain in a Maryville, Missouri, Wal-Mart.  She testified that before she fell, she looked at the mat and did not see a corner turned up.  After the fall, however, she turned around and saw that the corner of the rug in front of the fountain had a turned-up corner "just enough to catch your toe," causing her to trip.  Rodrick fractured her left hip as a result of the fall and underwent surgery to repair the hip within a few days, which was immediately followed by rehabilitation.  However, the screws used in the first surgery failed and Rodrick then had a total hip replacement just over one month later, on May 21, 2004, which was also followed by physical therapy.

One year later, Rodrick fell while visiting her husband at a nursing home, resulting in a third surgery in April 2005, followed by several months in a wheelchair.  She claims this second fall was due to a dropped toe, which she claims developed following the initial Wal-Mart fall.  Rodrick began to experience many difficulties after the 2004-2005 time frame, including an inability to go to the bathroom by herself, the need to use a wheelchair or walker for stability, an inability to care for her then-infirm husband before his death, and other similar limitations.  Rodrick sued Wal-Mart for her injuries and the jury returned a verdict in Wal-Mart's favor.  Rodrick then filed a motion for new trial.

Rodrick raised three issues in her motion for new trial, each of which she raises on appeal. Rodrick challenged (1) the court's admission of the testimony and "expert" report from Dr. Simon, a physician who conducted an independent medical examination, who testified based upon his own personal observations of Rodrick; (2) the court's exclusion of evidence regarding prior falls on the rug, which Rodrick sought to introduce by way of cross-examination; and (3) the court's denial of a new trial based upon certain statements from defense counsel during closing arguments regarding the good character of the Wal-Mart store manager which had been

discussed during voir dire. Any additional facts relevant to these issues accompany the discussion of that issue below.

## II. DISCUSSION

Inversely related to a trial court's wide discretion in deciding whether to grant a new trial is our limited scope of appellate review. "We review the district court's denial of [Rodrick's] motion for a new trial for abuse of discretion, and give the district court's ruling high deference." PFS Distrib. Co. v. Raduechel, 574 F.3d 580, 592 (8th Cir. 2009). Encompassed within the district court's ultimate denial are its evidentiary rulings. We likewise afford the district court broad discretion in its evidentiary rulings, "[i]n deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters." Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008). We will reverse only "if the district court's ruling was based on 'an erroneous view of the law or a clearly erroneous assessment of the evidence' and affirmance would result in 'fundamental unfairness.'" Wegener v. Johnson, 527 F.3d 687, 690 (8th Cir. 2008) (quoting Davis v. U.S. Bancorp, 383 F.3d 761, 765 (8th Cir. 2004)).

### A. Dr. Simon's Expert Testimony

At trial, the court allowed Wal-Mart's independent physician, Dr. Simon, to testify regarding the observations he made during his independent medical examination of Rodrick. Dr. Simon prepared a report following the evaluation. Specifically as to the report, Rodrick claims that it should not have been entered into evidence, nor should it have served as the basis for Dr. Simon's testimony, because it did not comply with Fed. R. Civ. P. 26(a)(2), which dictates the form and framework of disclosed expert reports. For example, Rodrick argues the report was not signed, offered no opinions, was never updated, and did not indicate the data upon which Dr. Simon relied, all of which is required by Rule 26. In response, Wal-

Mart points out that (1) Simon's report was never offered nor admitted into evidence, (2) Rodrick failed to object to the report following its disclosure, thus waiving any objections at trial, and (3) Rodrick failed to raise a Daubert challenge.

The district court held that despite its failings under Rule 26(a), use of Dr. Simon's report at trial was harmless because there was no surprise or prejudice to Rodrick. Wal-Mart revealed Dr. Simon and his report to Rodrick a year and a half prior to trial. And, curiously, Rodrick made no objections or requests for supplementation regarding this report until the day Dr. Simon was to approach the witness stand. The court further held that the trial was not disrupted by Dr. Simon's testimony. Jacobsen v. Deseret Book Co., 287 F.3d 936, 953 (10th Cir. 2002) (noting that a district court can allow evidence violating Rule 26(a) if the violation was justified or harmless). Additionally, the court noted that Dr. Simon did not testify as an expert, but rather he testified about his own personal observations and experiences, as specifically directed by the district court.

A district court considers several factors in determining whether a Rule 26 violation is justified or harmless, including: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." Id. (quotation omitted). And, even then, the court need not make explicit findings concerning the existence of a substantial justification or the harmlessness. Id. As to the report, despite Rodrick's persistence, even though it was marked at trial and discussed extensively by the parties with the court, because it was never offered and received into evidence, there is nothing to discuss on appeal regarding its admission per se. The district court clearly agreed with Rodrick that Dr. Simon's report failed to comply with the Rule 26 edicts. The court, however, did not exclude Dr. Simon's testimony as a result but rather very specifically limited Dr. Simon's testimony to particular aspects of his

examination and personal observations of Rodrick. The court instructed Dr. Simon to stay tightly within the bounds of his report.

Rodrick argues that Dr. Simon should not have been allowed to testify at all and that much of his testimony was "irrelevent" or "incorrect." The greatest controversy Rodrick had at trial and on appeal regarding Dr. Simon's testimony concerns, among other statements, the doctor's statements that Rodrick did not use a walker to enter his medical office on the day of her examination, his testimony that none of Rodrick's medical records reveal a diagnosis for toe drop/foot drop, and that Rodrick suffers from polyarthritis. The district court, however, appropriately addressed Rodrick's trial objections regarding Dr. Simon by limiting his testimony only to his own personal observations. This testimony would have been no surprise to Rodrick, because it was contained in the report given to Rodrick well before trial. If indeed Dr. Simon's testimony was incorrect, certainly Rodrick could have called her own witnesses to rebut the testimony, or could have otherwise cross-examined Dr. Simon.

Ultimately, the court's admission of Dr. Simon's testimony could have had only a slight impact, if any at all, on the jury's verdict, and we will not reverse on this basis. Admission of this testimony was harmless. Primarily, Dr. Simon's testimony informed the issue of damages, an issue never reached by this jury given their finding of no liability. His testimony did not run to Wal-Mart's alleged liability on the date of the accident. In fact the court expressly admonished that Dr. Simon in no way discuss the events of April 2. We find no abuse of discretion regarding the admission of Dr. Simon's testimony.

## B.    Impeachment Evidence

At trial, the court refused to allow into evidence any exhibits or testimony regarding a previous incident that occurred on the same rug, in the same location, prior to Rodrick's fall.  Affording the district court the discretion due, we affirm.

During discovery, Rodrick obtained a copy of written notes from a "Risk Control Weekly Team Meeting" held five days after Rodrick's fall, which referenced that Wal-Mart pulled up the rug in front of the fountain after Rodrick's fall because it was the second incident at that location.  Rodrick intended to use the evidence of the first incident to rebut the trial testimony of Lawrence Scheffe, the store manager, who testified that, in a situation involving a slip and fall, it is "standard protocol when an accident occurs, [to] take pictures, [] do the incident report, and then [in a case like Rodrick's,] store the mat away."  Rodrick also highlighted another statement made by Scheffe against which she claims she could have used this prior incident evidence.  Specifically, Scheffe was asked if, prior to Rodrick's fall, anyone else had reported a problem with the mat.  Scheffe responded, "No, they did not."

Outside the presence of the jury, the parties discussed the prior incident at length, revealing that at some point prior to Rodrick's fall, a Wal-Mart customer who had recently undergone knee surgery put his foot down on the rug and pushed the rug forward causing stress to the customer's knee, which seems to have led to a fall.  Scheffe claimed the information given to him was that "the rug pushed forward, causing [the customer] to go back."  According to the proffered testimony, there was nothing wrong with the rug at that point, nor was the rug the impetus of the fall.  Rather, the customer pushed the rug, which is why the rug was not picked up following that incident.  There was no discussion by the parties regarding the severity of the fall or injury, if any, sustained by the prior customer; or whether an incident report was even completed.

Even though the two incidents involved the exact same rug, the court determined that they were too dissimilar to allow use of the prior incident for impeachment purposes at Rodrick's trial, assuming the evidence was proper impeachment evidence in the first instance. The court noted that the information available regarding the prior event was only secondhand. The court reiterated that there was no direct testimony from the customer involved in the prior incident so the court did not have a good indication as to what the specific underlying facts were, there was no incident report from the prior event, and there was no indication that the rug necessarily played a role in the prior incident because the fall occurred when the customer pushed the rug. Accordingly, the court held that any probative value provided by the limited evidence proffered regarding the prior incident was outweighed by potential prejudice, and it denied use of the incident for impeachment purposes at trial.

The district court did not clearly abuse its discretion in denying use of the prior incident evidence at trial. Although the store manager might have opened the door to impeachment when he testified that no one had previously reported a problem with the mat in question, the two incidents were not similar–one a slip because a customer pushed the rug and became off-balance, and one a trip. Reviewing the proffer to the court, it is not wholly accurate to describe the prior incident as involving a report of a problem with the mat. Rather, in the prior incident, the proffer indicates that the customer was the impetus.

Given the differences between the two incidents, we reject the argument that proof of the prior incident supported the inference that Wal-Mart had the sort of "knowledge or warning" that could aid the jury in its negligence determination. See Stacy v. Truman Med. Ctr., 836 S.W.2d 911, 926 (Mo. 1992) (en banc) ("Where the theory of recovery is negligence, any knowledge or warning that defendant had of the type of accident in which plaintiff was injured clearly aids the jury in determining whether a reasonably careful defendant would have taken further precautions under

all the facts and circumstances, which include the knowledge of defendant of prior accidents.")  "[T]he admissibility of [this] evidence lies within the discretion of the district judge, who must weigh the dangers of unfairness, confusion, and undue expenditure of time in the trial of collateral issues, against the factors favoring admissibility."  Hicks v. Six Flags Over Mid-America, 821 F.2d 1311, 1316 (8th Cir. 1987).  We acknowledge that the analysis is close on this issue.  However, our task is not to make the determination afresh.  We thus affirm, as there was no clear abuse of discretion.

## C.    Closing Argument

In addition, during closing arguments, Wal-Mart's counsel referenced statements made by potential jurors during voir dire, stating, in effect, that the jury had heard other potential jurors talk about the good character of Wal-Mart's store manager, Scheffe.  The district court sustained Rodrick's objection to this colloquy and instructed the jury to disregard it.  When a motion identifies improper closing argument as a basis for new trial, relief is granted only if the statements are "plainly unwarranted and clearly injurious" and "cause prejudice to the opposing party and unfairly influence a jury's verdict."  Littleton v. McNeely, 562 F.3d 880, 889 (8th Cir. 2009) (quotations omitted).  Stated simply, Rodrick fails to meet this burden.  Given the context in which the comment was made, the immediate objection, which was sustained, and the court's contemporaneous curing instruction, the comment was not clearly injurious.  Harrison v. Purdy Bros. Trucking Co., 312 F. 3d 346, 353 (8th Cir. 2002).  The district court did not abuse its discretion by denying the motion for new trial because of improper closing arguments.

## III. CONCLUSION

For the reasons stated herein, we affirm the district court's denial of Rodrick's motion for new trial.

_____