# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-1861

_____

United States of America

*Plaintiff - Appellee*

v.

Kevin Jay Mast

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Sioux Falls

_____

Submitted: February 14, 2019
Filed: September 16, 2019

_____

Before LOKEN, COLLOTON, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

In 2010, Kevin Jay Mast came up with a plan to install drain tile to drain water from certain areas of his property in Brookings County, South Dakota, so as to make it more suitable for farming. He requested approval of his drainage project from the U.S. Natural Resources Conservation Service (NRCS). The NRCS noted that Mast's property was subject to an easement that the U.S. Fish and Wildlife Service (FWS)

had acquired from a previous property owner in 1973, and it instructed Mast to seek permission from the FWS for his drainage project. The FWS easement prohibited draining of "small wetland or pothole areas suitable for use as waterfowl production areas." The FWS created a map of the wetland areas on the property and sent it to Mast, explaining that his proposed drainage project would violate the terms of the easement and suggesting alternate locations on the property where drain tile could be installed without interfering with the identified wetland areas. Nearly two years later, in response to Mast's 2010 request for approval, the NRCS sent Mast another map identifying "wetland locations and setback distances" in which drain tile could not be installed, which differed from the areas identified on the FWS map.

In the fall of 2013, Mast installed drain tile on his property in a manner consistent with the NRCS map but inconsistent with the FWS map. The government charged Mast with knowingly disturbing property within the National Wildlife Refuge System (NWRS), in violation 16 U.S.C. § 668dd(c) and (f)(1). At trial, the district court instructed the jury on both the charged offense and the lesser-included offense of otherwise disturbing NWRS property, in violation of § 668dd(c) and (f)(2). The jury found Mast not guilty of the greater offense but guilty of the lesser offense.

Mast appeals his conviction and sentence. He raises many issues on appeal, but we need address only one: whether the jury was properly instructed on the mental state required by the lesser offense. Jury instructions are usually reviewed for abuse of discretion, but where, as here, "statutory interpretation is required, 'it is an issue of law that we consider de novo.'" United States v. Carlson, 810 F.3d 544, 551 (8th Cir. 2016) (quoting United States v. Petrovic, 701 F.3d 849, 858 (8th Cir. 2012)).

"[D]etermining the mental state required for commission of a federal crime requires construction of the statute and inference of the intent of Congress." Staples v. United States, 511 U.S. 600, 605 (1994) (cleaned up). We begin with the statute itself. See id. 16 U.S.C. § 668dd(c) prohibits "disturb[ing]" NWRS property,

including land subject to easements such as the easement at issue here.[1]  Criminal penalties are set out in subsection (f), which provides:

> **(1) Knowing violations**
>
> Any person who knowingly violates or fails to comply with any of the provisions of this Act or any regulations issued thereunder shall be fined under Title 18 or imprisoned for not more than 1 year, or both.
>
> **(2) Other violations**
>
> Any person who otherwise violates or fails to comply with any of the provisions of this Act (including a regulation issued under this Act) shall be fined under Title 18 or imprisoned not more than 180 days, or both.

Mast was charged with a knowing violation under subsection (f)(1).

When fashioning the jury instructions for Mast's trial, the district court correctly noted that the sole difference between (f)(1)'s greater offense and (f)(2)'s lesser offense is the requisite mental state.  The district court instructed the jury that the greater offense required proof beyond a reasonable doubt "that Mast knew the wetlands at issue were subject to an easement," whereas the lesser offense did not.  In other words, it instructed the jury as if subsection (f)(2) were a strict liability offense, one that does not require proof of any kind of mental state.

But our system of law acknowledges the "universal," "persistent" principle that "wrongdoing must be conscious to be criminal."  Elonis v. United States, 135 S. Ct. 2001, 2009 (2015) (quoting Morissette v. United States, 342 U.S. 246, 250, 252

---

[1]"No person shall disturb, injure, cut, burn, remove, destroy, or possess any real or personal property of the United States . . . unless such activities are performed by persons authorized . . . or unless such activities are permitted" by law.  Id.

(1952)).  Thus, courts generally interpret criminal statutes to require, at a minimum, proof that the defendant knew "the facts that make his conduct fit the definition of the offense," even when the statute does not explicitly include such a requirement.  Id. (quoting Staples, 511 U.S. at 608 n.3).  Only when the statute indicates, expressly or through implication, that Congress intended "to dispense with *mens rea* as an element of a crime" is it appropriate to treat the statute as setting out a strict liability offense.[2] Staples, 511 U.S. at 606.

Here, neither subsection (c) nor subsection (f)(2) expressly or implicitly indicates that Congress intended to dispense with a mental state requirement. Subsection (c) does not explicitly refer to any mental state, but "silence on this point by itself does not necessarily suggest that Congress intended to dispense with a conventional *mens rea* element."  Id. at 605.  The phrase "otherwise violates" within subsection (f)(2), in combination with its lesser penalties, implicitly requires a less culpable mental state than subsection (f)(1)'s "knowing violations."  But because subsection (f)(2)'s penalties are still relatively severe—a fine of up to $5,000 or six months imprisonment, or both, as compared to subsection (f)(1)'s fine of up to $100,000 or 1 year imprisonment, or both—we do not read it to depart so

---

[2]Excepted from this rule are "public welfare" statutes that lack an explicit mental state requirement and "regulate potentially harmful or injurious items." Staples, 511 U.S. at 606–07.  The Court has "reasoned that as long as a defendant knows that he is dealing with a dangerous device of a character that places him in responsible relation to a public danger, he should be alerted to the probability of strict regulation, and [it has] assumed that in such cases Congress intended to place the burden on the defendant to ascertain at his peril whether his conduct comes within the inhibition of the statute."  Id. at 607 (cleaned up).  Section 668dd(c) does not regulate an inherently harmful or dangerous item, and therefore we must "presume a scienter requirement in the absence of express contrary intent."  United States v. X-Citement Video, Inc., 513 U.S. 64, 71–72 (1994) (explaining that the federal child pornography statute "is not a public welfare offense [because p]ersons do not harbor settled expectations that the contents of magazines and film are generally subject to stringent public regulation").

significantly from subsection (f)(1)'s mental state requirement as to abandon the requirement entirely. See id. at 616–19 ("[A] severe penalty is a further factor tending to suggest that Congress did not intend to eliminate a *mens rea* requirement."). Instead, subsection (f)(2) encompasses violations committed with all "other" mental states. See United States v. Bailey, 444 U.S. 394, 403–04 (1980) (listing "a hierarchy of culpable states of mind . . . in descending order of culpability, as purpose, knowledge, recklessness, and negligence").

We next turn to the legislative history. Cf. X-Citement Video, 513 U.S. at 469–72 (reviewing a statute's legislative history when determining its required mental state). The National Wildlife Refuge System Improvement Act of 1998 amended 16 U.S.C. § 668dd to include subsections (f)(1) and (f)(2). Pub. L. No. 105–312, sec. 206, 112 Stat. 2956. An earlier version of § 668dd provided a single penalty for anyone "who violates or fails to comply with" subsection (c), which at that time prohibited "knowingly disturb[ing]" NWRS property. § 669dd(c) & (e) (1996). The statute was amended two years later to provide for certain penalties for "knowing violations" and lesser penalties for "other violations." National Wildlife Refuge System Improvement Act of 1998 sec. 206. A committee report indicates that the amendment was meant to provide more stringent penalties when "the person acted 'knowingly,' that is, acted voluntarily and intentionally, not through ignorance, mistake, or accident," and "lower[]" penalties "for unintentional violations (those not 'knowingly' committed)." S. Rep. No. 105-310, at 3 (1998), 1998 WL 596837. Just as with the statutory language, the legislative history does not indicate, expressly or implicitly, an intent to dispense with a mental state requirement entirely.

Because neither the statutory language nor the legislative history indicates an intent to dispense with a mental state requirement as an element of § 668dd(f)(2), courts may not treat the statute as setting out a strict liability offense; some mental state is required. As noted, the statute's language does not identify the precise mental state necessary to sustain a conviction under subsection (f)(2). But the language of

the committee report indicates that, in distinguishing between the two types of violations, Congress intended for subsection (f)(2) to proscribe negligent violations.[3] See McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988) (explaining that the words "'voluntary,' 'deliberate,' and 'intentional' [are] generally understood to refer to conduct that is not merely negligent"). "Negligence requires only that the defendant should have been aware of a substantial and unjustifiable risk . . . ." Elonis, 135 S. Ct. at 2015 (Alito, J., concurring in part and dissenting in part) (cleaned up) (quoting Model Penal Code § 2.02(2)(d) (Am. Law. Inst. 1985)). Thus, we conclude, based on the statutory language, the legislative history, and the strong preference that criminal statutes require some minimal *mens rea*, that subsection (f)(2) requires the government to prove beyond a reasonable doubt that Mast should have known that there was a substantial risk that his actions would "violate[] or fail[] to comply with any of the provisions of th[e] Act or any regulations issued thereunder"—as relevant here, subsection (c).

We find this construction "particularly appropriate" because "to interpret the statute otherwise would be to criminalize a broad range of apparently innocent conduct." Liparota v. United States, 471 U.S. 419, 426 (1985). Unless Mast knew or should have known that carrying out a drainage project on his own land would disturb NWRS property, his conduct was innocent. Indeed, as we have noted, this offense "is considered *malum prohibitum* rather than *malum in se* and cannot be regarded as a serious moral offense." United States v. Seest, 631 F.2d 107, 109 (8th

---

[3]The few district courts to have considered this question have reached the same conclusion. See United States v. Kenner, 238 F. Supp. 3d 1157, 1163–64 (D. Neb. 2017); United States v. Best, No. 11-cr-414, 2012 WL 3027544, at *4–5 (N.D. Cal. July 24, 2012); see also United States v. Crawford, No. 11-cr-105, 2012 WL 1028912, at *7 & n.1 (D. Alaska Mar. 23, 2012) (holding that proof of negligence satisfies subsection (f)(2) and declining to address the government's argument that subsection (f)(2) does not require any culpable mental state).

Cir. 1980), abrogated on other grounds by United States v. Johansen, 93 F.3d 459, 463–65 (8th Cir. 1996).[4]

Mast cites United States v. Peterson, 632 F.3d 1038, 1041 (8th Cir. 2011), for the proposition that subsection (f)(2) requires proof "that the defendant knew that the parcel was subject to a federal easement." But this portion of Peterson is dicta, as the outcome of the issue on appeal—whether the statute's mental state requirement applies to the *scope* of the easement—did not depend on the precise mental state required under subsection (f)(2). See id. at 1043. We also note that Peterson relied on Johansen, 93 F.3d at 467, which concerned an earlier version of § 668dd, one that, as discussed above, provided a single penalty for anyone "who violates or fails to comply with" subsection (c).[5] § 668dd(e) (1996). Peterson does not affect our conclusion.

---

[4]The dissent asserts that our reliance on Elonis is misplaced because, in that case, the Court concluded that "negligence is not sufficient to support a conviction under Section 875(c)." Elonis, 135 S. Ct. at 2013. We disagree. Elonis reiterated the basic rule that "mere omission from a criminal enactment of any mention of criminal intent should not be read as dispensing with it." Id. at 2009 (quoting Morissette, 342 U.S. at 250) (cleaned up). The Court was then tasked with deciding *what* mental state was required under the statute. Here, however, we are tasked with deciding whether the statute at issue requires a mental state at all. Courts should be "reluctant to infer that a negligence standard was intended in criminal statutes," Elonis, 135 S. Ct. at 2011 (quoting Rogers v. United States, 422 U.S. 35, 47 (1975)), but they should be equally, if not more, reluctant to conclude that a criminal statute requires no *mens rea* at all, see Staples, 511 U.S. at 606 ("[O]ffenses that require no *mens rea* generally are disfavored.").

[5]Neither party challenges the district court's instruction on the mental state required by subsection (f)(1), so we do not address whether Rehaif v. United States, 139 S. Ct. 2191 (2019), in conjunction with the 1998 amendment, affects Johansen's formulation of the mental state requirement.

In Mast's case, the jury was erroneously instructed that the lesser offense was a strict liability crime when, in fact, the lesser offense requires proof of the defendant's negligence. In our view, the evidence presented at trial would have been sufficient to allow a reasonable juror to convict Mast under the proper formulation of the lesser offense. See United States v. Keys, 721 F.3d 512, 519 (8th Cir. 2013). But given the jury's acquittal of Mast on the greater offense—which differed from the lesser offense only in its mental state requirement—we cannot say that the evidence of Mast's culpable mental state was so overwhelming that it rendered the erroneous instruction harmless. See United States v. Pereyra-Gabino, 563 F.3d 322, 328–29 (8th Cir. 2009). Thus, we vacate Mast's conviction and remand the case for further proceedings consistent with this opinion.

COLLOTON, Circuit Judge, dissenting.

Federal crimes are created by statute, and whether to include a *mens rea* element is a policy decision for Congress. A fair reading of the National Wildlife Refuge System Improvement Act of 1998 shows that Congress established certain misdemeanor criminal violations in 16 U.S.C. § 668dd(f)(2) that do not require proof of *mens rea*. In our system of separated powers, I would respect that choice and affirm the judgment.

The statute in question defines certain "[p]rohibited and permitted activities." *Id.* § 668dd(c). Appellant Mast's charged activities were prohibited: "No person shall disturb . . . any real . . . property of the United States, including natural growth, in any area of the [National Wildlife Refuge] System." *Id.*

The statute creates two misdemeanor criminal offenses set forth in a subsection entitled "Penalties":

**(1) Knowing violations**

Any person who knowingly violates or fails to comply with any of the provisions of this Act or any regulations issued thereunder shall be fined under Title 18 or imprisoned for not more than 1 year, or both.

**(2) Other violations**

Any person who otherwise violates or fails to comply with any of the provisions of this Act (including a regulation issued under this Act) shall be fined under Title 18 or imprisoned not more than 180 days, or both.

*Id.* § 668dd(f).

A straightforward reading of the two subsections shows that Congress established proof of an offender's knowledge as an element of the more serious offense, but declined to require any *mens rea* for the lesser offense. The court construes subsection (f)(2) to encompass violations committed "with all 'other' mental states," *ante*, at 5, but the statute does not say that. Subsection (f)(2) applies to all "other *violations*," not all "other mental states." A person "knowingly violates" the Act by knowingly disturbing System property; a person "otherwise violates" the Act by disturbing System property without the knowledge required under subsection (f)(1). Unlike mere silence, the text and structure of this statute provide the necessary "indication of congressional intent, express or implied, . . . to dispense with *mens rea* as an element of [the] crime." *Staples v. United States*, 511 U.S. 600, 606 (1994).

To justify reading a *mens rea* element of "negligence" into subsection (f)(2), the court, *ante*, at 3, cites the "universal" and "persistent" principle that "wrongdoing must be conscious to be criminal." *Elonis v. United States*, 135 S. Ct. 2001, 2009

(2015) (quoting *Morissette v. United States*, 342 U.S. 246, 250, 252 (1952)). But that principle does not support construing subsection (f)(2) to require proof of negligence. *Elonis* itself *rejected* a *mens rea* of "negligence" in 18 U.S.C. § 875(c), because it was *inconsistent* with the "universal" principle that the court here invokes. 135 S. Ct. at 2011. The court necessarily concedes that Congress in subsection (f)(2) departed from the principle that "wrongdoing must be conscious to be criminal," for it concludes that the subsection does not require a *mens rea* of knowledge or even recklessness. The effort to derive a negligence element from the "basic principle" that negligence is insufficient is thus an unconvincing mismatch.

To be sure, the "background rules of the common law" are sometimes stated in a way that suggests a broader presumption—for example, "[t]he existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence." *Staples*, 511 U.S. at 605 (alteration in original) (internal quotation marks omitted). But again, these expressions trace back to common-law rules that *knowledge* or *intent* are usually essential elements of a crime. *See United States v. United States Gypsum Co.*, 438 U.S. 422, 436-37 (1978) (citing Blackstone's statement that to constitute any crime there must first be a "vicious will"); *Morissette*, 342 U.S. at 250-51 (same); *Dennis v. United States*, 341 U.S. 494, 500 (1951) (listing mental states of "knowingly," "maliciously," "wilfully," "with the purpose of," and "with intent to"). Where, as here, Congress plainly has eschewed the common-law rule by "creating an offense new to general law," *see Morissette*, 342 U.S. at 262, and dispensing with knowledge as an element of the crime defined in subsection (f)(2), the traditional background rules do not aid our interpretation. We are left instead with the ordinary meaning of a text that encompasses any person who "otherwise violates" the Act by disturbing System property.

The court also relies on the language of a Senate committee report to justify reading a "negligence" element into subsection (f)(2). The Senate Committee on Environment and Public Works issued a report saying that the 1998 Act "lowers the

penalty for unintentional violations (those not 'knowingly' committed)." S. Rep. No. 105-310, at 3 (1998), 1998 WL 596837. Aside from the ordinary problems with relying on legislative history—no bicameralism and presentment, focus on "intent" rather than meaning, unfamiliarity of legislators with the material, and so forth, *see generally* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 369-390 (2012)—the cited statement does not support the court's result. That the Act criminalized violations that are "unintentional" and not "knowingly" committed means that Congress overrode the background common-law rule that those elements typically are required. It may be that "intentional" means conduct that is "not merely negligent," *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988), *see ante*, at 6, but the converse of that proposition does not logically follow. "*Un*intentional" does not mean "negligent." One who acts without *mens rea*, just as much as one who acts negligently, commits an "unintentional violation" or one that is "not 'knowingly' committed."

While the offense defined in subsection (f)(2) is *malum prohibitum* rather than *malum in se*, it is within the province of Congress, in furtherance of interests that it deems important, to impose criminal penalties for conduct that otherwise would be innocent. "The definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute." *Liparota v. United States*, 471 U.S. 419, 424 (1985). We may hope and expect that Congress will dispense with a *mens rea* requirement only in limited circumstances, but so-called "strict-liability offenses are not unknown to the criminal law and do not invariably offend constitutional requirements." *United States Gypsum Co.*, 438 U.S. at 437. They may further a legislative goal of deterrence "by inducing a change in activity level." Richard A. Posner, *An Economic Theory of the Criminal Law*, 85 Colum. L. Rev. 1193, 1224 (1985). The Supreme Court, for example, long ago held constitutional a statute making it a felony offense to cut timber on state lands without a permit, despite the absence of a *mens rea* element. *Shevlin-Carpenter v. Minnesota*, 218 U.S. 57, 67-69 (1910). A misdemeanor offense of disturbing the

-11-

National Wildlife Refuge System regardless of *mens rea* is thus within the scope of permissible legislative action.

Without adequate support for his position in statutory text, common-law background rules, or legislative history, Mast is left with a policy argument against criminal offenses that lack a *mens rea* requirement. There is a case to be made for *mens rea* reform. *See* Benjamin Levin, *Mens Rea Reform and Its Discontents*, 109 J. Crim. L. & Criminology 491, 509-517 (2019) (describing legislative proposals "designed to address concerns about overcriminalization and statutes without clear mental state requirements"); John G. Malcolm, *Morally Innocent, Legally Guilty: The Case for Mens Rea Reform*, 18 Fed. Soc'y Rev. 40, 42 (2017) (arguing that legislative reform is warranted because "many criminal laws lack an adequate—or *any*—mens rea requirement," and "innocent mistakes or accidents can become crimes"); Rachel E. Barkow & Mark Osler, *Designed to Fail: The President's Deference to the Department of Justice in Advancing Criminal Justice Reform*, 59 Wm. & Mary L. Rev. 387, 422 (2017) (observing that "most criminal law scholars and professional bar associations have lamented for years that strict liability laws have no place in the criminal sphere"). Judicial distaste for eliminating the requirement of *mens rea* in a criminal statute, however, must give way to the authority of Congress to make that choice. The district court's jury instruction accurately reflected the meaning of 16 U.S.C. § 668dd(f)(2), so I would affirm the judgment.[6]

---

[6]Mast raises several other contentions that typically would warrant discussion, but in light of the court's disposition, a detailed treatment of those issues in this separate opinion would be largely academic. I ultimately conclude that none of them calls for reversing the judgment.