# United States Court of Appeals
## For the Eighth Circuit

———————————————————

No. 20-2497

———————————————————

United States of America

*Plaintiff - Appellee*

v.

Kevin Jay Mast

*Defendant - Appellant*

———————————

Appeal from United States District Court
for the District of South Dakota - Southern

———————————

Submitted: February 19, 2021
Filed: June 7, 2021

———————————

Before LOKEN, BENTON, and KELLY, Circuit Judges.

———————————

KELLY, Circuit Judge.

In 2018, a jury in the District of South Dakota convicted Kevin Mast of disturbing, injuring, and destroying real property of the United States, see 16 U.S.C. § 668dd(c), (f)(2), after finding that he drained wetlands protected by a United States

Fish and Wildlife Service (FWS)[1] conservation easement. We vacated Mast's first conviction because of an erroneous jury instruction. After a 2019 bench trial, the district court[2] found Mast guilty of the same offense. He now appeals, and we affirm.

I.

The Migratory Bird Hunting Stamp Act of 1934, as amended, authorizes the Secretary of the Interior to acquire wetland conservation easements on private land for the purpose of protecting migratory birds. See 16 U.S.C. § 718d(b)(3), (b)(4). In 1973, the FWS purchased an easement on two tracts of Richard and Dorothy Vostad's farmland. Kevin Mast bought those tracts from the Vostads in 1983. Because the presence of wetlands on one of the tracts decreased the acreage available for farming, in 2010 Mast resolved to install subsurface drain tile to divert excess water.

The Food Security Act of 1985 makes "a person determined to have converted wetlands [into farmland] . . . ineligible to receive farm program payments from the federal government." Foster v. Vilsack, 820 F.3d 330, 332 (8th Cir. 2016) (cleaned up) (quoting Clark v. U.S. Dep't of Agric., 537 F.3d 934, 935 (8th Cir. 2008)). To ensure installing drain tile would not make him ineligible for farm assistance programs operated by the U.S. Department of Agriculture (USDA), Mast sought approval for his project from the Natural Resources Conservation Service (NRCS), an agency of the USDA.

---

[1] The FWS is one of the eleven technical bureaus that falls under the umbrella of the U.S. Department of the Interior. *Bureaus & Offices*, U.S. DEP'T OF THE INTERIOR, https://www.doi.gov/bureaus.

[2] The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

On July 22, 2010, the NRCS notified Mast that the tract he sought to install drain tile on was "either protected by a [FWS] easement or adjacent to such lands." To move forward with his plan, the agency explained, Mast would need approval from the FWS in addition to the NRCS.

Mast contacted the FWS and provided an aerial photo of the tract. On the photo, he had marked the places where he planned to install drain tile. Emily Fischer, an FWS biological technician, set to work mapping the wetlands on the tract. Her map identified seven different wetland areas. This led the FWS to send Mast a letter dated October 11, 2010 warning of a "conflict" between his drainage plan and the FWS's assessment of "the approximate location, size and shape of all wetland basins protected by the provisions of the easement."

Meanwhile, the NRCS did not complete its own assessment of Mast's plan for another two years. On June 11, 2012, the agency sent Mast a Certified Wetland Determination, which identified only three wetland areas on the tract where he planned to install drain tile. The NRCS explained that it would permit Mast to install drain tile at specified setback distances from the wetland areas, but that it was "[his] responsibility to ensure that [his] actions d[id] not impact wetlands protected by a [FWS] or any other conservation easement."

In the fall of 2013, Mast installed drain tile on his land consistent with the NRCS's proposed setbacks, but inconsistent with the FWS's assessment of wetland areas on the tract.

After an investigation by the FWS, the government indicted Mast in 2017 and charged that he "did knowingly disturb, injure, and destroy real property of the United States in that he drained and caused to be drained . . . wetlands" covered by the easement. See 16 U.S.C. § 668dd(c), (f)(1). In 2018, a jury convicted him of the lesser included offense, id. § 668dd(c), (f)(2), which does not require proof of

-3-

knowledge. Compare id. § 668dd(f)(1) ("Any person who knowingly violates or fails to comply with any of the provisions of this Act . . . ."), with id. § 668dd(f)(2) ("Any person who otherwise violates or fails to comply with any of the provisions of this Act . . . ."). This was the conviction we vacated. See United States v. Mast, 938 F.3d 973 (8th Cir. 2019). Because the jury instruction error was dispositive of his appeal, however, we did not rule on Mast's challenges to evidentiary rulings the district court made during the first trial.

In 2020, the government filed a superseding information largely identical to the first indictment, this time charging Mast with the lesser included offense and omitting the original indictment's allegation of knowledge. See 16 U.S.C. § 668dd(c), (f)(2). The parties again proceeded to trial, this time with the district court as the factfinder. In advance of the bench trial, the parties stipulated that "all of the evidence, exhibits, and testimony from the first trial," including previous "motions in limine," "objections in court," and the district court's rulings on them, would become part of the second trial record. The government declined to introduce any new evidence at the second trial and instead relied entirely on the record it created during the first trial. Mast called just one additional expert witness and otherwise relied on the existing record. The district court convicted Mast. In this second appeal, Mast challenges decisions the district court made during both his first and second trials.

II.

Mast contests a series of evidentiary rulings the district court made during the first trial. We "afford the district court broad discretion in its evidentiary rulings, in deference to [its] familiarity with the details of the case and its greater experience in evidentiary matters." Rodrick v. Wal-Mart Stores East, L.P., 666 F.3d 1093, 1096 (8th Cir. 2012) (cleaned up) (quoting Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)). "We will reverse only if the district court's ruling was based on an erroneous view of the law or a clearly erroneous assessment of the evidence and

affirmance would result in fundamental unfairness." Id. (cleaned up) (quoting Wegener v. Johnson, 527 F.3d 687, 690 (8th Cir. 2008)).

Although the district court made these rulings during the jury trial, Mast now challenges them in the context of the bench trial verdict. As such, concerns about shielding the jury from inadmissible or otherwise dubious evidence are no longer relevant. "In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions." Harris v. Rivera, 454 U.S. 339, 346 (1981) (per curiam). "[T]here is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself." In re Zurn Pex Plumbing Prods. Liab. Litig., 644 F.3d 604, 613 (8th Cir. 2011) (quoting United States v. Brown, 415 F.3d 1257, 1269 (11th Cir. 2005)). We review the district court's evidentiary rulings with this in mind.

## A.

Mast argues that the district court improperly allowed Fischer, the FWS biological technician, to testify as a lay witness about her process of mapping FWS wetland easements, including the one at issue in this case. Mast asserts that Fischer's testimony exceeded the permissible scope for a lay witness and that she should have been certified as an expert witness instead.

"Determining whether a witness is offering an expert or lay opinion requires a case-by-case analysis of both the witness and the witness's opinion." United States v. STABL, Inc., 800 F.3d 476, 486 (8th Cir. 2015). Under Rule 701, lay testimony must be (1) "rationally based on the witness's perception," (2) "helpful to clearly understanding the witness's testimony or to determining a fact in issue," and (3) "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

The fact that Fischer had professional training and experience preparing FWS easement maps did not, standing alone, render her testimony about the process of creating those maps expert testimony. See Farner v. Paccar, Inc., 562 F.2d 518, 529 (8th Cir. 1977) (holding that a truck operator with 30 years of trucking experience could testify as a lay witness about the proper use of safety chains installed to address a potential design defect in his truck so long as his testimony was limited to "his own knowledge and perception"); Burlington N. R.R. Co. v. Nebraska, 802 F.2d 994, 1004–05 (8th Cir. 1986) (ruling that it was an abuse of discretion not to consider lay testimony by four railroad executives who testified, "based on knowledge derived from supervising railroad operations, years of experience in the industry, and review of employee accident reports," that "trains with cabooses were no safer than cabooseless trains").

In our view, Fischer's testimony was limited to her firsthand knowledge and personal experience mapping wetlands covered by FWS easements. She explained how she uploaded aerial photos of the tract at issue into a geographic information system (GIS), a tool for capturing and analyzing geographic data, and used a touchscreen pen to draw an outline around any evidence of wetland areas she observed on each photo. Fischer testified that she then layered the marked-up photos on top of one another, "similar to like taking a transparency and drawing over something" and then "stacking those transparencies on top of each other." She drew an outline around evidence of different wetland areas that she identified "over and over again in the different photos" and, using GIS, turned those multiple layers into a single map. Although Fischer explained how she used this same process to create a map of the wetland areas on Mast's property, she did not offer any opinion about what portions of Mast's land the easement covered, nor did she otherwise opine about whether the government had proved the elements of the offense. Because Fischer's testimony was limited to narrating her process of mapping wetland easements and was not rooted in "scientific, technical, or other specialized knowledge," Fed. R.

Evid. 702(a), the district court did not abuse its discretion by allowing her to testify as a lay witness.

## B.

Mast also challenges the denial of his motion in limine to exclude testimony by the government's expert witness, Charles Loesch, an FWS wildlife biologist. At trial, Loesch testified that the wetland areas depicted in aerial photographs of Mast's property would be suitable for waterfowl production. The district court ruled his testimony admissible because it was relevant to "whether [the drain tile had] an impact on the ability of [the wetland areas] to serve as a waterfowl production area." Mast maintains that Loesch's testimony about the importance of wetland areas to waterfowl production was emotionally charged and thus was more prejudicial than probative.

A district court may exclude evidence under Rule 403 of the Federal Rules of Evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." It is undisputed that to convict Mast the government had to prove beyond a reasonable doubt that his installation of drain tile "caused surface and/or subsurface damage that injured, disturbed, or destroyed one or more of the wetlands." United States v. Mast, No. 4:17-CR-40078-01, 2020 WL 2574634, at *13 (D.S.D. May 21, 2020); see United States v. Peterson, 632 F.3d 1038, 1041 (8th Cir. 2011) ("To convict Peterson of the violation, the United States must prove beyond a reasonable doubt that identifiable covered wetlands . . . were damaged." (cleaned up) (quoting United States v. Johansen, 93 F.3d 459, 467 (8th Cir. 1996)). Loesch's testimony was relevant to determining whether Mast's actions damaged the wetland areas on his property. Although his testimony strayed at times beyond the simple question of whether the installation of drain tile damaged each of the wetland areas at issue and into an explanation of the importance of wetlands to waterfowl production, we see no

abuse of discretion in the district court's decision to deny Mast's motion to exclude Loesch's testimony in its entirety.

## III.

To convict Mast, the government had to prove beyond a reasonable doubt that the wetland areas he drained were identifiable wetlands covered by the easement. See Peterson, 632 F.3d at 1041. As is the case with many wetland easements the FWS acquired prior to 1976, the easement at issue here describes only the tracts of land it encompasses, without specifying where the covered wetlands are located within those tracts. See Johansen, 93 F.3d at 463. Because of this omission, the parties dispute which areas of Mast's property he needed permission from the FWS to drain.

Mast argues that the district court should have looked to the definition of "wetlands" contained in 7 C.F.R. § 12.2(a), a USDA regulation promulgated to enforce the Food Security Act of 1985, to determine which portions of the tract comprised wetlands covered by the easement. See United States v. Tebeau, 713 F.3d 955, 959 (8th Cir. 2013) (providing for de novo review). But our precedent is clear that we look to the language of the easement itself, and to the FWS's easement summary[3]—not federal regulations—to determine the easement's scope. In Peterson, we responded to the defendant's argument that some of the wetlands on his tract, including wetlands he drained, were not covered by the easement conveyed to the FWS. 632 F.3d at 1041. In doing so we looked to the text of the easement, which prohibited "draining . . . any surface water including lakes, ponds, marshes, sloughs, swales, swamps, or potholes, now existing or reoccurring due to natural causes on the above-described tract." Id. at 1042 (cleaned up). We said that when the easement in

---

[3]An easement summary is a document created by the FWS to record the total acreage of the tract of land as well as the total acreage of the wetlands within that tract covered by an FWS easement. See Peterson, 632 F.3d at 1040.

Peterson was "read together with the easement summary," which identified the total number of wetland acres covered by the easement, "it [was] clear that the 1966 easement cover[ed] all wetlands then existing on the [tract]." Id.; see Johansen, 93 F.3d at 463 (explaining that "the United States must prove beyond a reasonable doubt that identifiable, *covered* wetlands (as existing at the time of the easement's conveyance and described in the Easement Summary) were damaged"); United States v. Vesterso, 828 F.2d 1234, 1242 (8th Cir. 1987) ("The presence of the recorded easement agreements describing wetlands in clear terms and the existence of identifiable wetlands on the parcel are sufficient proof that the United States has a property interest in the wetlands on the parcel.").

We look to the same documents here. The easement at issue in this case provides for a permanent wetland easement on two sections of Mast's property to ensure their "maintenance . . . as a waterfowl production area." The easement states that the landowner and their successors "will cooperate in the maintenance of the aforesaid lands as a waterfowl production area by not draining or permitting the draining . . . of *any surface water including lakes, ponds, marshes, sloughs, swales, swamps, or potholes*, now existing or recurring due to natural causes on the above-described tract, by ditching or any other means." (emphasis added). This language describes what is covered by the easement. See Vesterso, 828 F.2d at 1241–42 & n.6 (stating that an identically worded wetland easement "describ[ed] wetlands in clear terms" and explaining that the meaning of the words "lakes, ponds, marshes, sloughs, swales, swamps and potholes . . . is clear to ordinary people" (cleaned up)).

Turning to the easement summary, it describes 196 acres of land, 33 of which are wetlands. The easement therefore covers 33 acres of "surface water including lakes, ponds, marshes, sloughs, swales, swamps, or potholes." This is consistent with the FWS's assessment that there are 28.4 acres of wetlands on the two tracts of land covered by the easement. Mast cites to no case in which this or any other court has looked instead to USDA regulations to determine the scope of an FWS easement, and

we know of none. The district court did not err in declining to consult 7 C.F.R. § 12.2(a)'s definition of wetlands to determine the scope of the easement or in excluding from trial any reference to the definition of wetlands or the criteria for delineating wetlands as set forth in the USDA regulations.

IV.

Next, Mast argues that even if the USDA regulations do not apply, the government nevertheless presented insufficient evidence to support a finding that the wetland areas existed on the tract and were identifiable as wetlands at the time of the easement's 1973 conveyance, a required element of the offense. See Peterson, 632 F.3d at 1041. Mast contends that only one of the seven wetland areas meets these criteria. "We review the sufficiency of the evidence after a bench trial in the light most favorable to the verdict, upholding the verdict if a reasonable factfinder could find the offense proved beyond a reasonable doubt." United States v. Iqbal, 869 F.3d 627, 629–30 (8th Cir. 2017).

We considered a similar challenge to the sufficiency of the government's evidence in Peterson. In that case, the government introduced into evidence a 1962 aerial photo of the tract at issue taken four years before the easement's conveyance. 632 F.3d 1041. An FWS wildlife biologist who testified as an expert explained that the wetlands visible in the 1962 aerial photo "were of the same approximate size, shape, and location as the drained wetlands." Id. We found that testimony, together with the government's photographic evidence and maps, amounted to "substantial evidence that the drained wetlands . . . existed at the time of the easement's conveyance in 1966." Id.

The district court relied on similar evidence to reach its verdict in Mast's case. During the first trial, the government introduced into evidence several aerial photos of the disputed wetland areas that predate the 1973 easement, including photos taken

in 1940, 1951, 1952, 1956, 1964, 1970, and 1972, as well as several photos that postdate the easement's conveyance. An FWS wildlife biologist—the same one who testified at the <u>Peterson</u> trial—then pointed out visual indicators of seven different wetland areas on photos taken before and after the 1973 easement conveyance. He explained that the seven wetland areas were "persistent" and remained "in the same place" on each photo, though in some years they "g[o]t a little smaller or bigger" or appeared "dry or farmed." The district court credited this expert testimony and the photographic evidence to conclude that the government proved beyond a reasonable doubt that all seven of the wetland areas at issue in this case existed at the time the easement was conveyed in 1973.

Mast's main argument on appeal is that both the government's witnesses and the district court improperly relied on a 2010 map prepared by the FWS, which the district court had ruled inadmissible for purposes of proving the existence of wetlands at the time of the easement. But as the district court explained, the 2010 map was used at trial solely "as a guide to identify each wetland by a number." After reviewing the record, we see no indication that the 2010 map was used for impermissible purposes at trial. Viewing the evidence in the light most favorable to the guilty verdict, we conclude this verdict was supported by substantial evidence.

V.

Finally, Mast seeks modification of the Wetland Restoration Plan the district court ordered him to comply with as restitution. He asserts it was error for the district court to order that he restore the one wetland area it acknowledged there was no evidence he installed drain tile in. We review the district court's decision to award restitution for an abuse of discretion. <u>United States v. Gammell</u>, 932 F.3d 1175, 1180 (8th Cir. 2019). District courts have "wide discretion in ordering restitution," <u>United States v. Reichow</u>, 416 F.3d 802, 804–05 (8th Cir. 2005), though restitution is

-11-

generally limited to damages the victim suffered as a result of the defendant's offense of conviction. See Hughey v. United States, 495 U.S. 411, 416 (1990).

The district court found beyond a reasonable doubt that Mast installed drain tile in only six of the seven wetland areas protected by the easement. Because the government did not present evidence that Mast installed drain tile in the wetland area referred to as wetland area 5, the district court determined it "ha[d] not shown beyond a reasonable doubt that Mast engaged in prohibited activity wetland in area 5." The court nonetheless concluded that the instillation of drain tile in the other six wetland areas "damaged the surface or subsurface of each of the 7 wetlands." In making this finding, the court relied on photographic evidence and testimony from Loesch, who explained that "draining the surface water of one wetland area not only eliminates that specific area's suitability for waterfowl production, but can reduce the suitability of the waterfowl production of other wetlands within the wetland complex as a whole." Mast does not appeal the district court's finding that "evidence of surface or subsurface damage on each of the 7 protected wetland areas was established beyond a reasonable doubt." Rather, he argues only that the district court could not order him to restore a wetland area it did not find he had directly disturbed, injured, or destroyed.

The "primary and overarching goal" of the Mandatory Victims Restitution Act of 1996, 18 U.S.C. § 3663A, "is to make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being." United States v. Statman, 604 F.3d 529, 538 (8th Cir. 2010) (quoting United States v. Balentine, 569 F.3d 801, 806 (8th Cir. 2009)). Certainly, the restitution awarded cannot "exceed the actual, provable loss caused by the offense." United States v. Fonseca, 790 F.3d 852, 854 (8th Cir. 2015). But in this case the district court found beyond a reasonable doubt that Mast's actions "damaged the surface or subsurface of each of the 7 wetlands." It therefore ordered that Mast "restore the ponding capability" of the wetland areas, including wetland area 5, by

excavating and removing some portions of drain tile and plugging others pursuant to the Wetland Restoration Plan. Although Mast may have damaged wetland area 5 only indirectly, he does not contest the district court's determination that his instillation of tile in the other wetland areas damaged the surface or subsurface of wetland area 5. It was not error for the district court to order him to restore wetland area 5.

## VI.

The district court's judgment is affirmed.

_____