# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2059

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Sherron Donta Pinkin, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: January 9, 2012
Filed: April 3, 2012

_____

Before WOLLMAN, LOKEN, and GRUENDER, Circuit Judges.

_____

LOKEN, Circuit Judge.

Sherron Donta Pinkin pleaded guilty to participating in a conspiracy orchestrated by Kenyatta Cornelous to transport cocaine to Davenport, Iowa, convert it to crack cocaine, and distribute over thirty kilograms of cocaine base, all in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846. Pinkin appeals his 235-month prison sentence, the bottom of the advisory guidelines range, arguing the district court[1] committed procedural error in denying two- and four-level reductions for his minor role in the conspiracy, see U.S.S.G. §§ 3B1.2(b) and 2D1.1(a)(5), and in assessing

_____

[1]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

one criminal history point for a prior state court conviction for possession of marijuana that was, he contends, relevant conduct in the cocaine conspiracy under U.S.S.G. § 4A1.2(a)(1).  We affirm.

Cornelous recruited Pinkin in Gary, Indiana, in 2003.  Pinkin remained a conspirator until September 2005, when officers conducting a warrant search of conspirator Ricky Randle's house in Davenport found Pinkin with a small amount of marijuana that led to the state court conviction.  As a conspirator, Pinkin would accompany Cornelous to Davenport with large quantities of cocaine, usually one kilogram each trip, and stay behind after Cornelous left because Pinkin was one of two people Cornelous trusted to "handle my . . . drug activities."  When in Davenport, Pinkin usually stayed with Randle, a major Cornelous customer.  Pinkin would answer calls to Cornelous's phone, sell between one and nine ounces of cocaine base to Cornelous's smaller customers, and collect customer payments.  At sentencing, Cornelous testified that Pinkin made approximately ten trips from Gary to Davenport. Randle testified that, when Pinkin stayed at Randle's house, "he sold a lot of drugs" in addition to what Randle was selling.  Randle's cousin, Prentice Spraggins, testified that he moved to Randle's house in June 2005 and saw Randle selling crack that he obtained from Cornelous and Pinkin.

**1.  Role in the Offense.**  Accepting the Presentence Investigation Report's recommendation, for base offense level purposes the district court attributed to Pinkin 30.15 kilograms of the 31.51 kilograms attributed to Cornelous, resulting in an advisory guidelines total offense level of 37 after other adjustments that are not at issue.  The drug quantity finding is also not at issue.  Rather, Pinkin argues he is entitled to a minor participant reduction because he was "less culpable than most other participants, but [his] role could not be described as minimal."  U.S.S.G. § 3B1.2(b) comment. (n.5).  Pinkin has the burden of proof on this issue, which is a question of fact we review for clear error.  See United States v. Bush, 352 F.3d 1177, 1181-82 (8th Cir. 2003).

"A defendant's role in the offense is measured by the relevant conduct for which he is held responsible. Once the district court has determined the relevant conduct, each participant's actions should be compared against the other participants, and each participant's culpability should be evaluated in relation to the elements of the offense." United States v. Deans, 590 F.3d 907, 909 (8th Cir. 2010). Here, Pinkin's relevant conduct included nearly all drug quantities attributable to the conspiracy's organizer and leader, Cornelous. The testimony at sentencing established that Pinkin was not personally involved in the distribution of all quantities and that he doubtless sold far less than major customer Randle, who is now serving a life sentence. But, as the district court recognized, that does not end the inquiry. "[M]erely showing the defendant was less culpable than other participants is not enough to entitle the defendant to the adjustment if the defendant was 'deeply involved' in the offense." United States v. Rodriguez-Ramos, 663 F.3d 356, 367 (8th Cir. 2011) (quotation omitted). Numerous cases have concluded that a conspirator who was a purchaser and dealer of significant quantities of cocaine was "deeply involved," even if the overall conspiracy offense included other quantities. See, e.g., United States v. Bradley, 643 F.3d 1121, 1129 (8th Cir. 2011).

In arguing he was a minor participant, Pinkin primarily compares his conduct to that of Edward Jones, who served as Cornelous's driver in transporting large quantities from Gary to Davenport and who received a minor role adjustment. The district court rejected the comparison, observing that Pinkin "ran the [Davenport] operation while Cornelous was out of town," a role in the offense that "goes beyond the simple act of being a driver" and "cannot be called mitigating." We agree. Pinkin sold substantial quantities of crack cocaine, collected money from customers and other dealers, and had extensive knowledge of the conspiracy. He was at least as culpable as many of the conspirators in Davenport. Indeed, he was not significantly less culpable than major customer Randle: Cornelous "fronted" crack cocaine to both, and one of Pinkin's duties in Davenport was to collect Randle's drug debts to

-3-

Cornelous. The district court did not clearly err in denying Pinkin a minor participant role-in-the-offense reduction.

**2. The Prior Marijuana Conviction.** When calculating criminal history points, a sentencing court is to consider "any sentence previously imposed . . . for conduct not part of the instant offense," defined as conduct other than "relevant conduct" under U.S.S.G. § 1B1.3. U.S.S.G. § 4A1.2(a)(1) & comment. (n.1); United States v. Davidson, 195 F.3d 402, 409 (8th Cir. 1999), cert. denied, 529 U.S. 1093 (2000). When as in this case the "instant offense" is a drug conspiracy, and the prior conviction was for a drug-related offense committed during the conspiracy period, the question is whether the prior conduct was a "severable, distinct offense." United States v. Stone, 325 F.3d 1030, 1032 (8th Cir. 2003). Relevant factors include "temporal and geographical proximity, common victims, common scheme, charge in the indictment, and whether the prior conviction is used to prove the instant offense." United States v. Ault, 598 F.3d 1039, 1041 (8th Cir. 2010).

Pinkin argues his prior state court conviction "meets all of the tests for relevant conduct" and therefore the district court erred in assessing a criminal history point for his marijuana possession conviction, which placed him in Criminal History Category II instead of Category I. The conviction was based on 1.7 grams of marijuana found in Pinkin's possession during a September 2005 warrant search of conspirator Randle's home. Without question, there is temporal and geographic proximity -- the warrant search was part of the investigation of the broad conspiracy, and Pinkin's arrest ended his participation in the conspiracy. However, the small amount of marijuana Pinkin possessed was neither charged in the conspiracy indictment nor included in his offense conduct for purposes of calculating his base offense level. Nor did Pinkin present evidence the conspiracy dealt with marijuana, or that his possession of marijuana furthered the conspiracy in any way. The only conspirator who testified about marijuana was Randle, who said he had occasionally smoked marijuana for personal use but did not sell it. On this record, as in Davidson, Stone,

Ault, and United States v. Boroughf, 649 F.3d 887, 890-91 (8th Cir. 2011), we conclude that the district court did not clearly err in finding that Pinkin's marijuana possession conviction was for a separate and distinct offense and in adding one criminal history point for that offense.

The judgment of the district court is affirmed.

_____