# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-2203
_____

United States of America

*Plaintiff - Appellee*

v.

Cody Wayne Hopkins

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Western

_____

Submitted: February 15, 2024
Filed: April 4, 2024

_____

Before BENTON, GRASZ, and STRAS, Circuit Judges.

_____

BENTON, Circuit Judge.

After a jury trial, Cody Wayne Hopkins moved for a new trial, asserting prosecutorial misconduct. The district court[1] denied the motion. Hopkins appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

---

[1]The Honorable Jeffrey L. Viken, United States District Judge for the District of South Dakota, now retired.

# I.

Hopkins was charged with one count of Attempted Enticement of a Minor Using the Internet, in violation of 18 U.S.C. § 2422(b). He initiated conversations with a government agent, "Lucy," through a dating application. Lucy's profile showed she was 19 years old. In her first text message to him, Lucy said she was "13 almost 14" and hoped he was "okay with that." Hopkins replied, "Oh? Yeh. I'm still ok with meeting you and spending time with you[.]" Lucy texted she was alone for the next few days. Hopkins replied he would "come over whenever you'd like then." Lucy asked, "Does me being 13 years old bother you?" Hopkins replied, "No, it doesn't bother me. As long as it stays between me and you. At least till your old enough." Twelve minutes later, Hopkins texted, "I like to go down and eat pussy. I like to tease. And when I fuck, I like to switch it up. So I like all positions. I'm also down for multiple rounds if youd like[.]" He added he was "on the bigger side" and that "It might hurt a little in the very beginning but I'll take my time. Then it'll feel really good." He also asked if she was a virgin.

Lucy asked if he wanted to get a hotel. Hopkins said "yeh." When she asked whether he wanted to tell her the things he would like to try, he texted that he liked it when the "girl is on top" and "letting me eat you out." Hopkins told her he had a hotel room for them and asked for her address. Lucy stated she did not want her neighbors to see anything. She told Hopkins to pick her up at a nearby high school. Hopkins stated he would be on his "bike" (a motorcycle) because he was from out of town.

Hopkins pulled into the parking lot on his motorcycle, in an open leather jacket, bare torso visible to his navel. Police arrested him and seized his phone. Investigators found 66 text messages between Hopkins and the number used for Lucy, including the two texts where Lucy told Hopkins she was 13. The text messages all occurred over a two-and-a-half hour period.

Immediately interrogated at a Homeland Security office, Hopkins admitted Lucy told him she was 13. He claimed his intent was just to talk to her, to "take her on the bike to somewhere around town just to talk," and just wanted "to figure out what's wrong and I can't do it over text messages because it's too easy to just shut your phone off." Hopkins said he "was screwed," but also that he was "just playing along." Asked, "Do you think it's okay to talk like this to a child that's 13 years old the way that you did?" Hopkins replied, "No." Asked if this was something he did often, he said "No, I definitely went too far on this one."

## A.

At trial, Hopkins said he had not previously helped minors or met them online or in-person (contrary to his comments in his interview with Homeland Security). During direct examination, he stressed that when interrogated, he had been "going on severe sleep deprivation." During cross-examination, this colloquy occurred:

> **Hopkins**: I'm saying in my interview I had been going on severe sleep deprivation. I got confused with another person I had met back home.
>
> **Prosecutor**: You didn't declare this severe sleep deprivation to anybody when you were doing your interview. Correct?
>
> **Hopkins**: I did declare it, but it was not mentioned in the reports.
>
> **Prosecutor**: You declared it on the recording?
>
> **Hopkins**: No.

In fact, apparently unknown to both counsel at trial, Hopkins did mention to Homeland Security that he was sleep deprived, but they had agreed to redact part of his interview from the transcript given to the jury.

B.

The elements-of-offense instruction stated the elements for attempted enticement of a minor using the internet. It required the prosecutor to prove that Hopkins used his phone "to attempt to knowingly persuade, induce, entice, or coerce an individual under the age of 18 to engage in sexual activity." The instruction added that "the government must prove that Mr. Hopkins intended to persuade or entice a minor into engaging in illegal sexual activity."

During closing argument, the prosecutor argued that the text messages showed Hopkins attempted "to persuade, induce, entice, or coerce this child into meeting with him for the purposes of sexual activity." The prosecutor implied that Hopkins was not credible. The prosecutor stressed, among other points, that Hopkins said on the stand "for the first time" that he was sleep deprived. During rebuttal argument, the prosecutor said Hopkins "confessed on the stand to exactly what it is we have to prove, which is that he wanted to entice a minor." The prosecutor also asserted that Hopkins could be found guilty because he used "dirty talk" to "entice her to agree to keep on talking to him and to meet him." The prosecutor stated that the government did not have to "prove that he was going to go through with sex," and the jury did not have to make that finding either.

Defense counsel then objected, for the only time during either argument: "It appears that she's stating that she only has to prove that he intended to entice her and not entice her to engage in sexual activity." The court sustained the objection. The court instructed the jury that the objection was appropriate and elaborated:

> Now ladies and gentlemen, the instructions are really important. So they are the law in the case. You heard me read them. Refer to them again. You heard them during the deliberations.

At the court's direction, the prosecutor read a sentence from the elements-of-offense instruction: "What the government must prove is that Mr. Hopkins intended to persuade or entice a minor into engaging into illegal sexual activity."

The prosecutor immediately added: "He admitted that to you. He said he wanted to—he wanted to entice a sexually active person." The prosecutor also stated: "The bare-chested guy that showed up in Exhibit 6, clearly wanting to have sex, clearly enticing to have sex, but we don't even have to show that." Further, "either way he's guilty. . . whether it's the more likely scenario that he was there to have sex with her and he enticed her into coming there, and they were set on the mind—or rather there was an intent to have illegal sex."

The jury found Hopkins guilty. Defense counsel moved for a new trial, which the court denied. Hopkins appeals.

## II.

Hopkins argues that the district court should have granted a new trial because the prosecutor: (1) attacked his credibility based on untrue facts; (2) repeatedly misstated the elements of the charged crime; and (3) denied him a fair trial by cumulative prosecutorial misconduct.

## A.

Hopkins argues that the prosecution improperly attacked his credibility based on untrue facts. During cross-examination, the prosecution implied that he was committing perjury when he said he had told the police he was sleep deprived. During closing arguments, the prosecution said that the detective did not mention sleep deprivation and told the jury "[y]ou can consider who you believe in that situation." Defense counsel did not object either time. Because Hopkins did in fact tell a detective that he was sleep deprived, the parties believe this was a clear and obvious error.

"This court reviews unpreserved allegations of prosecutorial misconduct for plain error." ***United States v. Foreman***, 588 F.3d 1159, 1164 (8th Cir. 2009). Plain error review is governed by the four-part test. "[B]efore an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." ***United States v. Pirani***, 406 F.3d 543, 550 (8th Cir. 2005) (en banc), *quoting **Johnson v. United States***, 520 U.S. 461, 466–67 (1997).

Even if the error here were clear, obvious, and not subject to reasonable dispute, it did not affect Hopkins's substantial rights. He argues it did because credibility was critical to his case. Whether Hopkins told the detective about his sleep deprivation was a minor part of the trial. The explicit text messages and Hopkins's confessions of the facts were overwhelming evidence of his guilt. *See **United States v. Miller***, 621 F.3d 723, 732–33 (8th Cir. 2010) (reversing conviction where the objected-to evidence "may" have been sufficient, but "not overwhelming," and the timing of the district court's overruling the objection right before submission to the jury "likely eliminated the possibility that the jury remained somehow immune to the potential prejudicial effect of the comments."); ***United States v. Beeks***, 224 F.3d 741, 747 (8th Cir. 2000) (reversing conviction that was substantially bolstered by the prosecutor's questions, where the evidence was "not strong" and not "overwhelming"). *See generally **United States v. Barrera***, 628 F.3d 1004, 1009 (8th Cir. 2011) (holding that the evidence against defendant was overwhelming, and that "even if either or both instances of alleged misconduct were actually improper, such misconduct was unlikely to have affected the verdict."); ***United States v. Splain***, 545 F.2d 1131, 1135–36 (8th Cir. 1976) ("The overwhelming evidence of guilt in this case convinces us that the prosecutor's comment could not have prejudiced [the defendant] or affected the jury verdict.").

B.

Hopkins argues that during rebuttal closing argument, the prosecutor repeatedly misstated the elements of the charged crime. "The district court enjoys broad discretion in controlling closing arguments" and this court "will overturn a conviction only for a clear abuse of that discretion." *United States v. Beaman*, 361 F.3d 1061, 1064 (8th Cir. 2004).

Opening the trial, the court instructed the jury that "[s]tatements, arguments, questions and comments by lawyers . . . are not evidence." *See United States v. Robinson*, 110 F.3d 1320, 1326-27 (8th Cir. 1997) (this lawyer's-arguments-are-not-evidence instruction "served to alleviate any risk of prejudicial impact."). Then, following defense counsel's objection, the district court reminded the jury that "the instructions are really important." It also noted that the objection was "appropriate," followed immediately by having the prosecutor clarify her argument. The prosecutor then read verbatim the key sentence of the elements-of-offense instruction to the jury. These curative steps reduced the risk of prejudice, including for anything that may have happened later. *See United States v. Golliher*, 820 F.3d 979, 986 (8th Cir. 2016) (deeming the prosecutor's statements "harmless in light of the court's correct instructions to the jury").

Hopkins claims the prosecutor misstated the elements of the crime three times *after* the sustained objection. The district court properly found that after the sustained objection, the prosecutor did not misstate the elements of the crime. Regardless, "[i]f an arguably improper statement made during closing argument is not objected to by defense counsel, we will only reverse under exceptional circumstances." *United States v. Mullins*, 446 F.3d 750, 758 (8th Cir. 2006), *citing United States v. Eldridge*, 984 F.2d 943, 947 (8th Cir. 1993). *See United States v. Poitra*, 60 F.4th 1098, 1103 (8th Cir. 2023) ("Even if the closing were improper," "the strength of the evidence supporting the conviction indicates that the result at trial would not have been different absent the prosecutor's rebuttal comments."); *United States v. Fenner*, 600 F.3d 1014, 1024 (8th Cir. 2010) (defendant was not

"deprived of a fair trial given the strength of the evidence against him" even assuming the prosecutor advanced an "improper" theory of conviction during closing argument); *United States v. Bryant*, 349 F.3d 1093, 1097 (8th Cir. 2003) ("When strong evidence is presented against a defendant, minor missteps by the prosecutor do not warrant a new trial.").

Due to the overwhelming evidence of guilt and the curative actions the district court took, this case does not present an exceptional circumstance.

C.

Hopkins concludes that the cumulative effect of prosecutorial misconduct denied him a fair trial. "To obtain a reversal, he must show that the prosecutor made improper remarks that prejudiced his rights in obtaining a fair trial." *United States v. Marin*, 31 F.4th 1049, 1054–55 (8th Cir. 2022), *citing United States v. Crumley*, 528 F.3d 1053, 1064 (8th Cir. 2008). "For prejudice, this court looks to (1) the cumulative effect of the improprieties, (2) the strength of the evidence against the defendant, and (3) whether the district court took any curative action." *Id.*, *citing United States v. Darden*, 688 F.3d 382, 388 (8th Cir. 2012). Hopkins must demonstrate "a reasonable probability that the outcome would have been different absent the alleged error." *Darden*, 688 F.3d at 389, *quoting United States v. Herbst*, 668 F.3d 580, 587 (8th Cir.2012).

Here, Hopkins overstates the significance of the prosecutor's comments about sleep deprivation and the prosecutor's misstatement of the elements. Due to graphic texts, Hopkins's confessions, and the court's acts, there is no reasonable probability of a different outcome in this case. *See United States v. Truax*, 64 F.4th 963, 968 (8th Cir. 2023) (In an 18 U.S.C. § 2422(b) case, during rebuttal closing argument, the prosecutor said defendant's testimony was uncorroborated, not based on facts, and his behavior while testifying was a "show" and "theatrics." Held, "assuming the argument was improper, there is no reasonable probability that [defendant] would have been acquitted without the statements. Given the overwhelming

evidence against [defendant], he cannot show the remarks were clearly injurious, or that prejudice resulted.")

The district court properly denied the motion for new trial.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____