# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-2901

_____

United States of America

*Plaintiff - Appellee*

v.

Anthony Lemicy

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 26, 2024
Filed: November 26, 2024

_____

Before SMITH, ERICKSON, and STRAS, Circuit Judges.

_____

ERICKSON, Circuit Judge.

A jury convicted Anthony Lemicy on four counts of sexual exploitation of a minor, in violation of 18 U.S.C. § 2251(a), (e). The district court[1] sentenced him to consecutive terms of 30 years' imprisonment on each count for a total sentence of

---

[1]The Honorable Henry E. Autrey, United States District Court for the Eastern District of Missouri, Eastern Division.

120 years. On appeal, Lemicy raises a number of claims, including: (A) he did not knowingly and voluntarily waive his right to counsel; (B) his constitutional right to a fair trial was violated when he appeared at trial in an orange jumpsuit and restraints; (C) the jury instructions failed to properly define "use" of a minor to engage in sexually explicit conduct under 18 U.S.C. § 2251; (D) the evidence was insufficient to sustain the convictions; (E) the district court improperly calculated his criminal history points by counting "related" state convictions; and (F) the district court imposed a substantively unreasonable sentence. We affirm.

## I. BACKGROUND

On July 25, 2019, St. Louis Metropolitan Police Department officers responded to two 911 calls regarding a disturbance at Lemicy's apartment. One call was made by Lemicy who reported that he was being falsely accused of molesting children. The second call came from an adult female who was accusing Lemicy of sexual assault of minors. Upon arrival, officers observed several children playing in the front yard and encountered the female 911 caller on the front porch of Lemicy's residence. While talking to the female, one of the officers noticed Lemicy inside the residence at the top of the stairs leading to the second floor. One officer remained with the female while the other officer went up the stairs to talk to Lemicy. The adult female reported to law enforcement that Lemicy had sexual contact with several minor girls, including her daughter, while they were in Lemicy's care for the last several days. When the officer spoke to the girls individually, three of them reported that Lemicy had walked around in his underwear and had shown them his penis or touched them with his penis. Another girl disclosed that Lemicy had shown her a video of Lemicy with his mouth on her vagina while she was asleep. One of the girls also reported that Lemicy had taken pictures of her while she was in the shower with another girl.

Law enforcement transported Lemicy to the police department for further investigation. During a recorded interview, Lemicy confirmed that beginning on July 17, 2019, he had been babysitting between 6 to 8 children (4 girls and 4 boys)

-2-

between the ages of 5 and 11.  He denied the allegations of sexual misconduct and suggested he was being falsely accused by the 911 caller because she thought he allowed her daughter to be bullied by the other kids.  Lemicy gave consent to law enforcement to look at his cellphone and he was released from custody pending further investigation.

The four girls were subsequently interviewed at the children's advocacy center where they disclosed additional details of Lemicy engaging in, or trying to, engage in sexual contact with them.  The password Lemicy provided to law enforcement for his cellphone did not work, but a review of the SD card in his phone revealed three videos dated July 22, 2019, which depicted two minor females talking while showering, and, at one point, the camera was moved and pointed to capture the girls' unclothed genitals.  Without the correct password, a deeper analysis of Lemicy's cellphone data stalled for more than a year.  Once law enforcement obtained the technology to bypass the password, a subsequent full forensic examination of Lemicy's cellphone was conducted pursuant to a search warrant. The examination uncovered additional videos of minor girls recorded in July 2019, including a video of a prepubescent female's genitals displayed while lying on Lemicy's bed and Lemicy engaging in sexual contact with a minor female.

In September 2019, Lemicy was indicted on one count of producing images of two minor females in a lascivious display of their genitals, in violation of 18 U.S.C. § 2251(a).  After the additional evidence was obtained from Lemicy's cellphone, the grand jury returned a superseding indictment in April 2021.  The superseding indictment contained four counts: Count One pertained to the videos of the girls recorded while they were showering; Counts Two and Three related to two videos Lemicy recorded while engaging in sexual contact with a minor female; and Count Four was connected to a video Lemicy took of a minor female's genitals.  The court appointed a federal public defender to represent Lemicy on the charges.  When that relationship broke down, the court appointed new counsel.

Defense counsel filed a motion to suppress and refiled several of Lemicy's *pro se* motions, which the court had previously denied without prejudice. Shortly before the hearing on the motion to suppress, Lemicy informed defense counsel, who in turn informed the court, that Lemicy wanted to conduct the questioning of the witnesses and make legal arguments himself at the suppression hearing. The court continued the evidentiary hearing and discussed with Lemicy the seriousness of the charges, including the potential penalties he faced, the difficulties and risks of representing himself, and informed Lemicy that under no circumstance does he have the right to both proceed *pro se* and have defense counsel represent him. After Lemicy continued to express a desire to represent himself, the court attempted to convince Lemicy that he would be better served to act as standby counsel and have appointed counsel represent him. When Lemicy remained unconvinced, the court asked Lemicy about his familiarity with the federal rules of evidence. In response, Lemicy appeared to reference a rule of criminal procedure, which the court used as an illustration to demonstrate the difficulties of representing himself and the different sets of rules with different goals that he will have to know and comply with at hearings and trial. Lemicy told the court that he understood the expectations, that he was capable of representing himself, and that he wanted to proceed *pro se*.

At the evidentiary hearing, the issue of self-representation was again addressed. The district court reiterated to Lemicy the expectations as a *pro se* defendant and encouraged Lemicy to proceed with counsel. Lemicy insisted on representing himself and proceeded to cross-examine the government's witnesses and submitted post-hearing briefing.

After submitting objections to the magistrate judge's report and recommendation, Lemicy filed a motion for a hearing to appoint new counsel because of a conflict of interest. At the hearing, Lemicy complained that standby counsel was not assisting him enough. Lemicy also expressed dissatisfaction because there was evidence that he wanted to introduce at the suppression hearing, but he could not get admitted because he was not guided or instructed properly. Lemicy sought to ensure that he would have adequate assistance in terms of filing

-4-

motions and gathering evidence for trial. The district court reminded Lemicy that standby counsel's obligation was limited and Lemicy was responsible for presenting his defense, which included filing motions, introducing evidence, formulating questions for witnesses, deciding what witnesses to call, and following courtroom procedure and evidentiary rules. With that understanding, the court asked Lemicy if he wanted standby counsel to remain on his case or not. Lemicy responded, "I'm just ready to go to trial. I mean, if he - - yeah, he can stay on. . . . I'll just figure it out and file the motions." Finding no basis for a conflict of interest or failure to act within the parameters of standby counsel, the court denied Lemicy's motion.

Lemicy represented himself during trial with standby counsel present. The government called several law enforcement officers who were involved in the investigation, plus the officer who forensically analyzed Lemicy's cellphone, as well as the mothers of two of the victims. Lemicy recalled one of the investigating officers during his case and then rested.

At the final jury instruction conference, Lemicy argued that "uses" is a verb and requested the jury be instructed that to satisfy the definition of "used" for the offense of sexual exploitation of a minor, "the person has to be used in a sexual depiction not if they are only photographed." The district court declined Lemicy's proposed instruction. Following the elements for each count, the court instructed the jury as follows: "A person is 'used' if they are photographed, video recorded, or videotaped."

During closing arguments, Lemicy argued that the evidence was insufficient to satisfy 18 U.S.C. § 2251 because the videos of the girls' genitals in the shower showed mere nudity and the government failed to prove the sexual acts depicted in the other videos were performed for the purpose of producing a visual depiction of sexually explicit conduct. In addition, when determining intent, Lemicy argued the jury should consider the evidence that he had deleted the videos prior to his contact with law enforcement.

The jury returned guilty verdicts on all counts. At sentencing, the district court found Lemicy's total offense level was 43 and his criminal history category was II, yielding an advisory Sentencing Guidelines range of life. Because the statutorily authorized sentence on each count was a minimum of 15 years and a maximum of 30 years, the applicable Sentencing Guideline range became 120 years under U.S.S.G. § 5G1.2(b). The court sentenced Lemicy to consecutive terms of 30 years' imprisonment on each count for a total term of 120 years, to run concurrent with any state sentence imposed for conduct related to this investigation. Lemicy appeals his convictions and sentences.

## II.    DISCUSSION

### A.    Waiver of the Right to Counsel

The Sixth Amendment guarantees criminal defendants the right to counsel. United States v. Conklin, 835 F.3d 800, 804 (8th Cir. 2016). A corollary constitutional right is the right to proceed *pro se*. Faretta v. California, 422 U.S. 806, 807 (1975). Because a *pro se* defendant is responsible for the organization and content of his defense, McKaskle v. Wiggins, 465 U.S. 168, 174 (1984), a defendant must knowingly, voluntarily, and intelligently waive the right to counsel. Whether a defendant waived his Sixth Amendment right to counsel involves a mixed question of law and fact, which we review *de novo*. See United States v. Brown, 956 F.3d 522, 524 (8th Cir. 2020); Wilkins v. Bowersox, 145 F.3d 1006, 1011 (8th Cir. 1998).

This Court has explained that a valid waiver of the right to counsel requires a defendant to be "aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." United States v. Hodges, 460 F.3d 646, 650 (8th Cir. 2006) (quoting United States v. Joseph, 333 F.3d 587, 590 (5th Cir. 2003)). To satisfy this standard, the district court must either inform the defendant of the dangers and disadvantages of self-representation, or evidence in the record—including a defendant's background, experiences, and conduct—must establish the defendant

knew and understood the disadvantages of self-representation. United States v. Armstrong, 554 F.3d 1159, 1165 (8th Cir. 2009).

Lemicy contends his waiver of the right to counsel was not knowing and voluntary because he made clear to the district court that he wanted standby counsel to help him present his defense, but the court placed too many restrictions on the function of standby counsel. More than thirty years ago, this Court explained that a district court is vested with the authority to require a "defendant to choose either to proceed *pro se*, with or without the help of standby counsel, or to utilize the full assistance of counsel." United States v. Swinney, 970 F.2d 494, 498 (8th Cir. 1992). This Court has expressly rejected the existence of a constitutional right to standby counsel. See United States v. Keiser, 578 F.3d 897, 903 (8th Cir. 2009). Once standby counsel is appointed, the role of standby counsel falls within the discretion of the district court. Cooley v. Nix, 991 F.2d 801 (8th Cir. 1993) (per curiam) (unpublished).

The record shows that Lemicy understood the expectations and difficulties of self-representation and knew the restrictions on standby counsel's role prior to waiving his right to counsel. With this knowledge, Lemicy elected to proceed *pro se*. He has cited no persuasive precedent demonstrating the district court violated his constitutional right to counsel or abused its discretion in defining the role of standby counsel as it did in this case. See United States v. Collier, 932 F.3d 1067, 1077 (8th Cir. 2019) (upholding a defendant's waiver of the right to counsel when defendant was repeatedly warned of the dangers of proceeding *pro se* and maintained a desire to represent himself on each occasion). Lemicy's reliance on United States v. Hansen, 929 F.3d 1238 (10th Cir. 2019), is unavailing because, unlike in Hansen, Lemicy was warned of the disadvantages of self-representation and indicated he understood the limited role standby counsel would have so long as he continued to proceed *pro se*. What Lemicy effectively seeks is to require the district court to allow dual representation or hybrid counsel—that is, the ability to act as co-counsel with standby counsel. As noted by the district court and explained to Lemicy prior

to his decision to proceed *pro se*, a defendant has no constitutional right to hybrid counsel.  Swinney, 970 F.2d at 498.

Lastly, from the time Lemicy knowingly and voluntarily waived his right to counsel until the conclusion of his case, nothing changed requiring the district court to revisit Lemicy's decision to proceed *pro se*.  See United States v. Olivares, 843 F.3d 752, 761 (8th Cir. 2016) (stating a district court need not reassess a defendant's waiver of the right to counsel *sua sponte* unless there is reason to doubt a defendant's competence); United States v. Norris, 698 Fed. App'x 849, 852-53 (8th Cir. June 23, 2017) (per curiam) (unpublished) (explaining that unless circumstances sufficiently change after a court conducts the requisite Faretta inquiry, a court is not obligated to revisit or conduct further inquiry on a defendant's waiver of the right to counsel). Lemicy has failed to demonstrate a violation of his Sixth Amendment right to counsel.

B.     Right to a Fair Trial

Lemicy asserts that his constitutional right to a fair trial was violated when he appeared at trial in an orange jumpsuit "handcuffed and shackled."  The Supreme Court has explained that an accused's constitutional right to a fair trial may be implicated if he is compelled to wear identifiable prison clothes at a jury trial.  Estelle v. Williams, 425 U.S. 501, 512 (1976).  Lemicy's claim as to his apparel at trial fails on two grounds: (1) he was not compelled to wear an orange jumpsuit at trial, and (2) he invited any alleged error.

Prior to the commencement of jury selection, and outside the jury's presence, the district court made inquiry of Lemicy on his appearance:

> THE COURT:     So, Mr. Lemicy, before we go much further, I see that you still have on garb from the facility where you are currently being housed; is that correct?

MR. LEMICY: Yes, sir.

THE COURT: And you understand that this is trial; right?

MR. LEMICY: Yes, sir.

THE COURT: Okay. And I'm assuming, correct me if I'm wrong, that you are afforded opportunity to dress out for trial and have appropriate attire on for trial as a person charged with crimes?

MR. LEMICY: What they considered appropriate.

THE COURT: I'm sorry, sir?

MR. LEMICY: What they considered appropriate.

THE COURT: Okay. And when you say 'what they considered appropriate,' what do you mean?

MR. LEMICY: I don't know if it's my size. I don't know what it looks like. I'm not comfortable wearing it.

THE COURT: Have you seen it?

MR. LEMICY: No.

THE COURT: You haven't seen it, you haven't tried it on, you don't know anything about it; right?

MR. LEMICY: Nothing at all.

THE COURT: All right. So, here's the deal. I'm not your lawyer. You are your lawyer, okay? The decisions that you make throughout the course of this case have been your decisions since you've been representing yourself. That includes your decision of what you look like or what you want the jury to see you look

-9-

like during the trial, all right? That's entirely up to you, okay? I can tell you that procedurally—I was going to say have I ever. No, I can't think of any defendant who has been on trial before me sitting where you are sitting represented by counsel, of course, who went to trial wearing the attire that was provided to them while they were in a confined situation at whatever facility they were in. That's not typically the way it works for obvious reasons. And since you are representing yourself, I'm sure you are already aware of what those obvious reasons are. If you are not aware, if you have questions about that, you could talk to your limited scope counsel and make inquiry about procedures or generally speaking what occurs. I can't tell you that because, well, frankly put, simply put, plainly put, I ain't your lawyer, okay? You are. So if you want to see whatever clothes that the Marshal's Service had for you or indicated to you or folks brought clothes in for you, I'll give you a few minutes to take a look at those things. I am assuming that they are downstairs near the holding area. If you don't want to do that, that's cool. We're ready to roll.

MR. LEMICY:    We can go forward.

The record shows that despite the court's cautionary advice and while given the opportunity to change out of jail-issued clothing, Lemicy elected not to change his clothes. The district court instructed the jury—both during *voir dire* and in the final jury instructions—to disregard Lemicy's appearance, mitigating any potential prejudice from his appearance. See United States v. Encee, 256 F.3d 852, 854 (8th Cir. 2001).

-10-

Because the record shows that Lemicy was not compelled to wear an orange jumpsuit at trial and any alleged error regarding his clothing at trial was invited by him, his claim fails.  See United States v. Corn, 47 F.4th 892, 895 (8th Cir. 2022) (explaining that the invited error doctrine bars a defendant from asking the district court to make a particular ruling and then claiming on appeal that the ruling was erroneous); United States v. Stricker, 4 F.4th 624, 627 (8th Cir. 2021) (noting the purpose of invited error is to preclude "a defendant from leading the district court 'down a primrose path' and later, on appeal, profiting from the invited error").

Regarding his second claim, the record has not been developed as to how or why Lemicy was restrained during trial.  The trial transcript indicates that a potential juror asked the court during jury selection how Lemicy could get a fair and impartial trial while wearing an orange suit and ankle bracelets.  The court responded that "nobody can compel anybody to look a certain way or to dress a certain way when they come into a courtroom, can't do that, and that is fair and impartial, not compelling people to do something out of a matter of choice."  The court further explained to the potential jurors that "what someone is dressed like, what someone looks like is not an issue that should be of concern for anybody because it's not part of the facts and the evidence in the case."  Lemicy did not object to the court's response, request a different instruction, or ask that the restraints be removed.

Lemicy's failure to object to the restraints constitutes a waiver or forfeiture of his claim.  See United States v. Olano, 507 U.S. 725, 733 (1993) (comparing waiver—the intentional relinquishment or abandonment of a known right—with forfeiture—the failure to make the timely assertion of a right).  We review constitutional claims not presented to the district court for plain error.  United States v. Rodriguez, 484 F.3d 1006, 1013 (8th Cir. 2007).  Under plain error review, Lemicy must show: (1) an error, (2) that is plain, and (3) that affects his substantial rights.  Olano, 507 U.S. at 732.  If all three conditions are met, this Court may exercise its discretion to notice a forfeited error if "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."  United States v. Hopkins, 97 F.4th 1127, 1131 (8th Cir. 2024) (cleaned up).

-11-

Lemicy's failure to make an objection regarding the restraints negates the presence of compulsion, which is necessary to establish his alleged constitutional violation. See Smith v. United States, 182 F.3d 1023, 1025 (8th Cir. 1999) (per curiam) (stating that for this Court to find the compulsion necessary to establish a constitutional violation of the right to a fair trial, an objection must have been made on the record). Further, considering the district court's instructions to the jury on Lemicy's appearance and the overwhelming evidence of guilt, there is no indication that the ankle restraints affected Lemicy's substantial rights.

C.    Jury Instructions

Lemicy contends the district court erred in instructing the jury on the definition of the term "used" for purposes of 18 U.S.C. § 2251(a). Jury instructions are generally reviewed on appeal for an abuse of discretion. United States v. Mast, 938 F.3d 973, 975 (8th Cir. 2019). Where statutory interpretation is required, however, it becomes an issue of law, which we review *de novo*. Id.

Here, the jury was instructed that the government must prove for each charged offense that Lemicy "knowingly employed, used, persuaded, induced, enticed, or coerced [a minor] to engage in sexually explicit conduct." The instructions informed the jury that "[a] person is 'used' if they are photographed, video recorded, or videotaped." At trial, Lemicy argued that the jury should be instructed that "the person has to be used in a sexual depiction not if they are only photographed."

Filming a minor engaged in sexually explicit conduct is one type of "use" listed in § 2251(a). United States v. Fortier, 956 F.3d 563, 567 (8th Cir. 2020). This Court has rejected challenges similar to the one Lemicy advanced in the district court and now on appeal. See United States v. McCoy, 108 F.4th 639, 644 (8th Cir. 2024) (en banc) (rejecting under plain error review defendant's claim that instruction on "used" should have required a finding that minor engaged in sexually explicit conduct); United States v. Thurber, 106 F.4th 814, 829-30 (8th Cir. 2024) (finding no plain error in instruction that stated minors are "used" for purposes of § 2251(a)

-12-

if "they are photographed or videotaped"); <u>United States v. Fadl</u>, 498 F.3d 862, 866 (8th Cir. 2007) (holding that the "use" element of § 2251(a) is satisfied if a child is photographed to create pornography); <u>United States v. Lohse</u>, 797 F.3d 515, 521 (8th Cir. 2015) (rejecting defendant's claim that § 2251(a) requires "either active participation by the minor or active sexual conduct to an unconscious minor by an adult defendant").

Because the district court's instruction was consistent with this Court's precedent and the jury instructions, as a whole, adequately and accurately set forth the elements of the charged offenses, we find no error in the jury instructions.

### D. <u>Sufficiency of the Evidence</u>

Lemicy challenges the sufficiency of the evidence as to all counts. A defendant violates 18 U.S.C. § 2251(a) when, in relevant part, he:

> employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct.

When reviewing a jury verdict, we view the evidence in the light most favorable to the verdict, drawing all reasonable inferences in favor of the verdict and reversing only where no reasonable juror could find all the elements proven beyond a reasonable doubt. <u>United States v. Raplinger</u>, 555 F.3d 687, 693 (8th Cir. 2009). We review the district court's denial of a motion for judgment of acquittal *de novo*. <u>Id.</u>

### 1. *Counts Two and Three*

As to the videos depicting sexual acts, Lemicy contends there was insufficient evidence for a jury to find the sexual acts were performed for the purpose of producing a visual depiction of sexually explicit conduct. The prosecutor argued to

-13-

the jury that evidence as to the timing of when the videos were made in addition to their content, number, and length proved Lemicy's intent to create recordings of child pornography.

The jury heard testimony from law enforcement officers about the videos found on Lemicy's cellphone. The videos were shown to the jury and ranged from 1 minute and 30 seconds to 2 minutes and 30 seconds. They were recorded within a couple of minutes of each other. During most of the recordings, Lemicy focused the camera on the sex act or attempted sex act. In light of the recordings' focus, the prosecutor also relied on the clothing the victim was wearing for purposes of identification.

The intent requirement of § 2251(a) is satisfied if there is sufficient evidence that one of the defendant's "dominant purposes" was to create a visual depiction of his sexual acts with the girls. Fortier, 956 F.3d at 567; see Raplinger, 555 F.3d at 693 ("The government need not prove that producing the photographs was [defendant's] sole purpose for engaging in the sexual activity."). Here, the videos were filmed from a first-person point of view, suggesting Lemicy was the one holding or positioning the recording device. See Fortier, 956 F.3d at 567-68 (explaining that facts presented at trial coupled with the content of videos may be sufficient for a jury to infer that the recordings were no accident, and the defendant made them for future viewing). In addition to these videos, the jury could also consider a recording that Lemicy took of the same minor female's genitals during which Lemicy announced as he was recording, "I gotta turn the light on."

The evidence in the record is sufficient to permit a rational jury to draw reasonable inferences and find beyond a reasonable doubt that one of Lemicy's dominant purposes in recording the videos was to produce visual depictions of sexually explicit conduct. Lemicy's arguments that he lacked the intent to record videos containing sexually explicit conduct or his explanation that he lacked the requisite specific intent because he deleted the videos was "a classic jury call." Id. at 568. Because a reasonable juror could find each of the elements of § 2251(a)

-14-

proven beyond a reasonable doubt, we will not disturb the jury's verdicts. The district court did not err in denying Lemicy's motion for judgment of acquittal as to Counts Two and Three.

### 2. *Counts One and Four*

Lemicy also asserts that the videos of the minor females in the shower did not depict sexually explicit conduct because there was no lascivious exhibition of the girls' genitals. See 18 U.S.C. § 2256(2)(A)(v) (defining "sexually explicit conduct" to include the "lascivious exhibition of the anus, genitals, or pubic area of any person"). Lemicy contends the videos merely show the girls showering while talking about clothing and hairstyles. He seeks to discredit the witnesses' and prosecutor's opinion that the videos focused on the girls' genitals, concluding "the videos speak for themselves."

The jury was instructed on the factors they could consider when determining whether the videos contained a lascivious exhibition of the minors' genitals or pubic area. Consistent with our precedent, the factors included: the focal point of the picture, the setting, the minor's pose, whether the minor was clothed, whether the picture suggests sexual coyness or a willingness to engage in sexual activity, whether the picture is intended or designed to elicit a sexual response in the viewer, whether the picture portrays the minor as a sexual object, and any captions on the pictures. See McCoy, 108 F.4th at 943 (noting these factors, taken from United States v. Dost, 636 F. Supp. 828, 832 (S.D. Cal. 1986), have been incorporated into the Eighth Circuit Model Criminal Jury Instructions and approved by this Court).

The dispositive issue before us is whether the evidence on Counts One and Four is sufficient for a reasonable juror to conclude beyond a reasonable doubt that Lemicy intended to capture a lascivious depiction of a minor female's genitals. In one of the videos relevant to Count One, when the minor females discover that Lemicy is recording them while they are showering, they walk to the other side of the shower and move partially behind the shower curtain. In response, Lemicy

moves to the other side of the shower, shifts the shower curtain open, and aims his camera at the females' genitals so that their faces are no longer visible. A changing of the camera angle and focusing on the girls' genitals is sufficient for a reasonable juror to find a lascivious exhibition of the minor's pubic area. See id. at 646-48. When the trial record is viewed in a light most favorable to the verdict and under our existing precedent, the evidence is sufficient on Count One to satisfy the statutory requirements of § 2251 and submit the charged offense to the jury for a finding on lasciviousness.

To the extent Lemicy also challenges the jury's verdict on Count Four, the video pertaining to this charge depicts a prepubescent female spreading her vagina while Lemicy turns on the lights in the room. Soon after, Lemicy used his cellphone to photograph the minor in the same position as the video. As with Count One, when the evidence is viewed in a light most favorable to the verdict and under our existing precedent, the evidence was sufficient on Count Four to satisfy the statutory requirements of § 2251 and submit this charged offense to the jury for a finding on lasciviousness.

E.    Sentencing Guidelines Calculation

Under U.S.S.G. § 4A1.1(a), the district court added three criminal history points for Lemicy's state convictions arising out of conduct that occurred during the commission of the instant offenses. Lemicy asserts that imposing these additional criminal history points amounts to double counting because the state convictions involved conduct that was part of the instant offenses. According to Lemicy, these three points prejudiced him by increasing his criminal history category from I to II.

This Court reviews "prior sentence" and "relevant conduct" determinations for clear error, taking into account that these determinations are fact-intensive and typically rest more properly within the district court's sentencing expertise and greater familiarity with the factual record. United States v. Hernandez, 712 F.3d 407, 409 (8th Cir. 2013). Conduct underlying a prior conviction is not relevant if

-16-

the conviction was a "severable, distinct offense." Id. When assessing whether a prior conviction is "relevant conduct" or a "severable, distinct offense," this Court has relied on the following factors: temporal and geographical proximity, the existence of common victims or common scheme, the charges in the indictment, and if the prior conviction was used to prove the instant offense. Id. (quoting United States v. Pinkin, 675 F.3d 1088, 1091 (8th Cir. 2012)).

While the state convictions involved sexual contact of some, but not all, of the same victims over the same timeframe contained in the indictment, the state and federal convictions are severable, distinct offenses. The state and federal crimes have different elements. The state convictions were not necessary to prove the instant federal offenses. Upon a review of the relevant factors, the district court did not clearly err in calculating Lemicy's criminal history points.

F.      Reasonableness of the Sentence

Lemicy also challenges the length of his sentence as substantively unreasonable. This Court reviews the reasonableness of a district court's sentence under the deferential abuse of discretion standard. United States v. Hance, 501 F.3d 900, 908 (8th Cir. 2007). A district court abuses its discretion by (1) failing to consider relevant factors; (2) giving significant weight to improper factors; or (3) committing clear error in judgment. United States v. Mitchell, 914 F.3d 581, 587 (8th Cir. 2019).

We presume a sentence imposed by the district court that is within the applicable Sentencing Guidelines range and based on permissible sentencing considerations listed in 18 U.S.C. § 3553(a) is reasonable. United States v. Jones, 990 F.3d 1141, 1144 (8th Cir. 2021). Lemicy contends the district court placed too much weight on some factors, made no reference to other mitigating factors, and failed to consider possible sentencing disparities. Sentencing courts are afforded broad discretion to weigh the § 3553(a) factors in each case and to assign some factors greater weight than others in determining the appropriate sentence. United

-17-

States v. DeMarrias, 895 F.3d 570, 574 (8th Cir. 2018).  This Court may not reverse a sentence on the ground that we think a different sentence is more appropriate.  Id.

When determining the appropriate sentence, district courts may consider the involvement of multiple victims, United States v. Straw, 616 F.3d 737, 744 (8th Cir. 2010), the defendant's lack of remorse, United States v. Palkowitsch, 36 F.4th 796, 801 (8th Cir. 2022), the impact on the victims, United States v. Green, 954 F.3d 1119, 1125 (8th Cir. 2020), and the gravity of the offense of conviction, United States v. Beasley, 688 F.3d 523, 535-36 (8th Cir. 2012); United States v. Ducharme, 93 F.4th 1110, 1113 (8th Cir. 2024).  "[D]isparate sentences among *dis*similar defendants are not unwarranted."  United States v. Fry, 792 F.3d 884, 893 (8th Cir. 2015).  General comparison based on the Judiciary Sentencing Information table maintained by the United States Sentencing Commission, which sets forth the average and median length of sentence for a particular sentencing guideline, does not demonstrate an abuse of the district court's sentencing discretion.  See United States v. McDaniel, 59 F.4th 975, 982 (8th Cir. 2023).  Nor do other cases in which this Court affirmed a shorter sentence imposed by the district court.

Upon review of the record, we find no abuse of discretion in the district court's weighing of the § 3553(a) factors.  The sentence imposed—while severe—was not substantively unreasonable.

## III.  CONCLUSION

For the forgoing reasons, the district court's judgment is affirmed.

_____