# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1154

_____

United States of America

*Plaintiff - Appellee*

v.

Thomas W. Pitts

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: January 13, 2025
Filed: May 19, 2025

_____

Before GRASZ, STRAS, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Thomas W. Pitts was indicted for conspiracy to distribute 50 grams or more of methamphetamine, 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846, and distribution of five grams of more of methamphetamine, § 841(a)(1) and (b)(1)(B). He was dissatisfied with his court appointed attorney, so the district court appointed a new one. Pitts did not like that lawyer either. A few days before trial, Pitts announced he wanted to represent himself.

During a hearing the next day, the court told Pitts, "It's not a very good decision. Any lawyer who wants to go pro se is a bad decision." The court excused the Government from the courtroom and asked Pitts if he was having issues with his lawyer. Pitts said yes and listed his grievances: not filing requested motions, having minimal contact and visits, not providing Pitts discovery, failing to subpoena witnesses, and lying. After a few clarifying questions, the court declared, "So we are going to trial." Things continued:

| | |
|---|---|
| Pitts: | So am I going to be representing myself? |
| The court: | Yeah, you want to go pro se. |
| Pitts: | Okay. How can you make me do this when I haven't had time to even look through my case? |
| The court: | [The Government] [is] coming back in. So you don't have to like my decision, but it's my decision. |

With the Government back in the room, the court considered how Pitts would testify (if he wanted to) while representing himself. The court also instructed Pitts on "some basic rules" like how to make an opening statement, how to examine and cross-examine witnesses, and the need to pause if the Government objected. At the end, the Government asked whether "the full thread inquiry was done on self-representation." The court replied, "Yes, that is accurate."

At the close of the hearing, Pitts moved—citing "cestui que vie trust" under canon law—to have the court, as his "trustee," discharge him and pay him compensation for his "false arrest." His motion was denied.

Pitts defended himself at trial, and a jury convicted him on all counts. The court sentenced him to 25 years in prison. Pitts appeals, arguing his Sixth Amendment rights were violated because he was not warned of the perils of self-representation. The Government concedes error.

The Sixth Amendment guarantees a criminal defendant the right to counsel. *United States v. Lemicy*, 122 F.4th 298, 305 (8th Cir. 2024). "It also protects a

defendant's right to waive his right to counsel and to represent himself" at trial. *United States v. Brown*, 956 F.3d 522, 524 (8th Cir. 2020) (citation omitted); *see also Faretta v. California*, 422 U.S. 806, 807 (1975). Even so, a district court must be satisfied that the defendant "knowingly, voluntarily, and intelligently waive[d] [his] right to counsel." *Lemicy*, 122 F.4th at 305; *see also Iowa v. Tovar*, 541 U.S. 77, 88 (2004). We review *de novo* a district court's decision to allow a defendant to waive counsel and proceed pro se. *United States v. Lebeau*, 867 F.3d 960, 973 (8th Cir. 2017).

The "key inquiry" is "whether [Pitts] was made sufficiently aware of his right to have counsel and of the possible consequences of a decision to forgo the aid of counsel." *United States v. Kiderlen*, 569 F.3d 358, 364 (8th Cir. 2009) (citation omitted). Either (1) the district court must "inform the defendant of the dangers and disadvantages of self-representation" or (2) "evidence in the record—including a defendant's background, experiences, and conduct—must establish the defendant knew and understood the disadvantages of self-representation." *Lemicy*, 122 F.4th at 305.

The only warning here was proceeding pro se is "not a very good decision"— and even for a lawyer would be a "bad decision." While we have upheld waivers as knowing and voluntary when the district court warned the defendant self-representation is a "horrible mistake" or a "bad idea," those cases included other specific warnings. *See United States v. Tschacher*, 687 F.3d 923, 932 (8th Cir. 2012) (in addition to "horrible mistake" warning, district court asked defendant "seriously to reconsider [his] decision," explained that "he would be held to the same standard as licensed attorneys," allowed him "to ask any questions regarding his self-representation," and gave defendant a recess to ponder his decision before "again ask[ing]"); *United States v. Turner*, 644 F.3d 713, 722 (8th Cir. 2011) (in addition to emphasizing that self-representation was a "bad idea," district court "assured itself that [defendant's] decision was not based on any shortcomings in his appointed counsel" and told defendant "how his ignorance of the rules of procedure and evidence would prejudice his defense" and how "his appointed counsel was far better

positioned to put the government to its burden"). While we do not have "a list of essential points" or "specific warnings" about self-representation, *Tschacher*, 687 F.3d at 932 (citations omitted), the district court must still "adequately warn[] the defendant about the dangers and disadvantages of proceeding pro se," *United States v. Crawford*, 487 F.3d 1101, 1106 (8th Cir. 2007). That did not happen here.

Neither does the record convince us that Pitts knew the risks of representing himself. Pitts had seventeen adult convictions spanning approximately fifteen years. But "extensive prior contact with the criminal justice system" by itself does not establish the required knowledge and understanding. *See United States v. Armstrong*, 554 F.3d 1159, 1165 (8th Cir. 2009) (in addition to being a "veteran of the criminal justice system," defendant "also had previous experience representing himself" and "confirmed" his understanding of proceeding pro se at hearings). While we may infer a defendant's understanding of the risks of self-representation from his "sophisticated and intelligent performance" in legal proceedings, Pitts's appeal to canon law suggests no such understanding. *Armstrong*, 554 F.3d at 1166. And with the Government's concession, we cannot locate anything in the record that shows that Pitts knew and understood the dangers of self-representation. *See Crawford*, 487 F.3d at 1106 (examining substance of defendant's "many [pro se] filings" to determine that defendant did not have "the knowledge required to effectively waive his right to counsel").

The waiver of counsel that is not knowingly, voluntarily, and intelligently made "cannot be harmless," *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984), and "requires reversal of the conviction," *Reese v. Nix*, 942 F.2d 1276, 1280 (8th Cir. 1991) (citing *Faretta*, 422 U.S. at 836).

The judgment is vacated, and the case is remanded.

_____